COMMONWEALTH vs. RONALD J. RENAUD.

No. 11-P-382.

Barnstable. December 13, 2011. - February 7, 2012.

Present: KATZMANN, SMITH, & GRAINGER, JJ.

*Destruction of Property. Breaking and Entering. Larceny. Evidence,*
Identification. *Identification. Practice, Criminal,* Motion for a required
finding, Required finding.

At the trial of a criminal complaint charging the defendant with malicious
destruction of property, breaking and entering in the daytime, and larceny,
the evidence was insufficient to prove that the defendant was the person
who had committed the charged crimes, where an electronic bank transfer
card bearing the defendant's name, which was found at the crime scene,
permitted an inference that the defendant at one time possessed the card,
but not that it was in his possession during the commission of the crimes.
[263-265]

COMPLAINT received and sworn to in the Falmouth Division of
the District Court Department on October 25, 2010.

The case was heard by *Michael C. Creedon,* J.

*Timothy St. Lawrence* for the defendant.

*Genevieve K. Henrique,* Assistant District Attorney, for the
Commonwealth.

KATZMANN, J. Identification cards are common currency of
everyday life. They are also portable objects that can be lost,
stolen, or transplanted by others. The instant appeal arises in
that context. After a jury-waived trial in District Court, a judge
found the defendant guilty of malicious destruction of property,
breaking and entering in the daytime, and larceny over $250.
The defendant argues on appeal that the judge erred in denying
his motion for a required finding of not guilty made at the close
of the Commonwealth's evidence. He contends that an identifi-
cation card found at the scene of the crime was insufficient
evidence to prove beyond a reasonable doubt that he was the
person who had committed the charged crimes. We agree.

In order to sustain the denial of a motion for a required finding of not guilty, "it is not enough for an appellate court to find that there was some record evidence, however slight, to support each essential element of the offense." *Commonwealth* v. *Mullane*, 445 Mass. 702, 714 (2006), quoting from *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Rather,

> "In reviewing the denial of a required finding of not guilty, we review the evidence introduced up to the time the Commonwealth rested its case to determine whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient for a reasonable jury to infer the existence of each essential element of the crime charged, beyond a reasonable doubt. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). See *Commonwealth* v. *Latimore*, [*supra* at 676-677]. No essential element of the crime may be left to a jury's conjecture, surmise, or guesswork. *Commonwealth* v. *Kelley*, 359 Mass. 77, 88 (1971)."

*Commonwealth* v. *Rivera*, 460 Mass. 139, 141 (2011). See generally Smith, Criminal Practice and Procedure §§ 36.6-36.13 (3d ed. 2007). "[W]e consider only the evidence introduced up to the time that the Commonwealth rested its case, and the defendant first filed his motion[] for [a] directed verdict[]." *Commonwealth* v. *Kelley*, 370 Mass. at 150. "[T]he defendant's rights become fixed at the time that the Commonwealth rested, and the defendant's motion[] for [a] directed verdict[] had been denied, even though the defendant chose thereafter to present further evidence." *Id.* at 150 n.1. See *Commonwealth* v. *Berry*, 431 Mass. 326, 330 (2000).

The relevant facts, as introduced by the Commonwealth before it rested, are that a break-in occurred in a home in Falmouth, and that four plasma television sets, a digital video disc player, and various sports memorabilia were missing. No one was observed perpetrating the break-in or stealing the property from the home. While examining the living room upon being called to the scene, a police officer discovered on the floor an electronic bank transfer (EBT) card with the name of the defendant, Ronald Renaud. It was taped together in three separate pieces. The owners and residents of the home did not recognize the defendant.

The police officer recognized the defendant's name and was aware that he had recently resided in Falmouth. The next day, a detective called the defendant's cellular telephone and recognized his voice. He informed the defendant that someone had found his EBT card on the side of the road. The defendant said that he had no knowledge that his card was missing and that he would have to go home to "check because he had not really looked for it." The detective informed the defendant that if he wanted to pick up the card, he could come to the police station. The defendant did not do so.[1]

The convictions here were based almost entirely on the fact that an EBT card bearing the defendant's name was found on the floor of the living room of the burglarized house. That evidence was insufficient to prove that the defendant was the individual who committed the charged crimes. Instructive is *Commonwealth* v. *Morris*, 422 Mass. 254 (1996) (*Morris*). In *Morris*, the defendant was convicted of murder in the first degree and armed assault in a dwelling, based on a fatal shooting by masked intruders. *Id.* at 254-255. At trial, the Commonwealth relied heavily upon the fact that the defendant's fingerprint was found on a mask that was left by an intruder at the scene of the crime. *Id.* at 257. To support the inference that the defendant was in fact one of the intruders, the Commonwealth introduced evidence that the defendant matched the description of one of the intruders, that the defendant's mother owned a vehicle resembling one seen fleeing the scene of the crime, and that defendant was a known associate of two of the other intruders. *Id.* at 258. On appeal, the court found that the evidence of the

---

[1]After the Commonwealth rested, the defendant testified. He testified that he had never been to the home where the break-in occurred. He also testified that the last time he saw the EBT card was several days before the alleged crime, that it was torn into three separate pieces and unusable, and that he had left the three pieces on top of a refrigerator. For the purposes of this appeal, as noted above, we do not consider the evidence that was introduced after the Commonwealth rested, as the Commonwealth did not meet its burden to overcome the defendant's initial motion for a required finding of not guilty. "As a practical matter, it makes no difference in the instant case whether the defendant's rights are assessed at the earlier time when he filed his motion[] or the later time when he renewed his motion[], since the Commonwealth's position as to proof clearly did not improve with the presentation of the defendant's case." *Commonwealth* v. *Kelley*, 370 Mass. at 150 n.1.

fingerprint, in combination of the other evidence of identity of the perpetrator, would have allowed a jury to reasonably infer that the defendant was one of the intruders, but that "the evidence does not, however, warrant such a conclusion beyond a reasonable doubt." *Id.* at 259. Therefore, the court held that a fingerprint found on a mask at the scene of the crime, in combination with the additional supporting evidence, was not enough to identify the defendant beyond a reasonable doubt.

The reasoning of *Morris* informs us here. Like a mask with a fingerprint on it, an EBT card is a portable object that suggests that at one point the object was in the possession of the person associated with it. In *Morris*, the inference could be drawn that because the defendant's fingerprint was on the mask, he was at one point in possession of the mask. Similarly, because the EBT card bore Renaud's name, it could reasonably be inferred that he was at one point in possession of the card. Yet in *Morris*, the court held that "the evidence would not warrant a finding beyond a reasonable doubt that the print was placed on the mask *during the crime*." *Id.* at 258 (emphasis added). Similarly, while there may be evidence that Renaud possessed his EBT card at some point prior to the crime, the Commonwealth has presented no evidence that Renaud possessed, and subsequently dropped, his EBT card *during the crime*. See *Commonwealth* v. *Swafford,* 441 Mass. 329, 341 (2004) (identity cannot be deduced beyond a reasonable doubt solely from ownership of an item connected with a crime). Indeed, the fact that the card was found taped together in three separate pieces evidences that it had been discarded by its owner on some prior occasion. In sum, ownership of an EBT card cannot allow a fact finder to conclude beyond a reasonable doubt that the owner of that card was in possession of it during the commission of a crime.

The Commonwealth counters that at the time of the crime, the defendant lived in the same town where the crimes were committed and was known to the police. While this may show that the defendant had the ability to commit the crimes due to physical proximity, the Commonwealth offers no explanation and cites no authority as to why these facts tend to prove that the defendant committed the actual crimes at issue. The Commonwealth also claims that the fact the defendant did not pick

up his EBT card after police informed him that it was in their possession shows consciousness of guilt. This claim is unpersuasive. The detective did not order the defendant to do anything, but simply informed him that if he would like to pick up his EBT card, he could do so. See *Commonwealth* v. *Stuckich*, 450 Mass. 449, 453 (2008) (where a detective did not order the defendant to do anything, consciousness of guilt was not supported when the detective told him about criminal charges against him, asked him to call back later, and the defendant never called back).

For these reasons, the judgments are reversed, the verdicts set aside, and the judgments are for the defendant.

*So ordered.*