NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11602

COMMONWEALTH  vs.  GERALD RUSSELL.


Essex.     November 3, 2014. - January 26, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, & Hines,
JJ.


Reasonable Doubt.  Practice, Criminal, Reasonable doubt,
     Instructions to jury, Lesser included offense.  Supreme
     Judicial Court, Superintendence of inferior courts.  Rape.
     Indecent Assault and Battery.



     Indictments found and returned in the Superior Court
Department on September 18, 1990.

     The cases were tried before Richard E. Welch, III, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Eric S. Brandt, Committee for Public Counsel Services, for
the defendant.
     Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.
     Alex G. Philipson, amicus curiae, submitted a brief.
     Bruce Ferg, amicus curiae, submitted a brief.


     CORDY, J.  "Then, what is reasonable doubt? It is a term

often used, probably pretty well understood, but not easily

defined."  Commonwealth v. Webster, 5 Cush. 295, 320 (1850).  So begins the venerable Webster charge on reasonable doubt.  The Webster charge informs the jury that a reasonable doubt exists when "they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge" (emphasis supplied).  Id.  For more than 150 years, this charge has delivered the preferred language for explaining reasonable doubt to jurors sitting on criminal trials in the Commonwealth.  Yet, it has never been required and, in this case, it was eschewed in favor of an instruction that permitted a conviction if the jury were "firmly convinced" of the defendant's guilt.

The defendant was acquitted on eighteen counts of statutory rape, but convicted on seven counts of the lesser included offense of indecent assault and battery on a child under the age of fourteen.  He appeals his convictions on grounds that the charge on reasonable doubt was constitutionally inadequate and that the lesser included offenses should not have been submitted to the jury.  With respect to the former, he argues that, even if the charge was constitutionally sound, we should exercise our general superintendence power to require the Webster charge in all criminal trials.

We granted the defendant's application for direct appellate review and now conclude that the judge's instruction on reasonable doubt passed constitutional muster and that there was

no error in the submission of the lesser included offenses to the jury.  Nonetheless, we also conclude that, pursuant to our superintendence power, a modernized version of the Webster charge must be given in criminal trials on a prospective basis. The defendant is not entitled to a special retroactive application of this new rule.  Consequently, we affirm the judgments of conviction.[1]

1.  Background.  We summarize the evidence presented at trial, reserving certain details for discussion of the issues on appeal.  In 1980, the defendant, who was then the boy friend and later the husband of the victim's mother, began living with the victim and her family.  The victim was six years of age at that time.  According to the victim, it was not long before the defendant began sexually abusing her.  It began with the defendant's touching of the victim's breasts and vaginal area while she was in the bathtub.  The victim testified that the abuse steadily became more invasive:  the defendant placed his fingers between the folds of her genital opening, rubbed his penis between her buttocks and in her vaginal area, performed oral sex on her, and required her to perform oral sex on him.

The victim also testified that, over the course of the abuse, she observed the defendant choke, slap, and punch her

_____

[1] We acknowledge the amicus briefs of Bruce Ferg and Alex G. Philipson.

mother, throw objects at her, and rip hair out of her head. The defendant told the victim that he would stop abusing her mother if the victim submitted to his advances. He said that if she told anyone about his sexual advances, the victim and her siblings would be placed in foster homes and their mother would go to jail. Nonetheless, in 1985, the victim told her mother that the defendant had been "touching" her. The victim's mother confronted the defendant, who denied the allegation.

The character of the abuse escalated in May, 1987, when the victim was approximately thirteen years of age. It was then, the victim alleged, that the defendant began having full vaginal intercourse with her in addition to the other acts previously described. The final act of abuse occurred on October 31, 1989. As a condition to going out on Halloween, the victim alleged that she was required to perform oral sex on the defendant. The victim did not return home, instead seeking the refuge of a friend -- to whom she then revealed her history of sexual abuse at the hands of the defendant.

On September 19, 1990, an Essex County grand jury returned six indictments, each charging the defendant with three counts of statutory rape, G. L. c. 265, § 23. Each indictment reflected a distinct period of time during which the rapes were alleged to have occurred, with each charge representing a distinct mode of rape during the time frame of the corresponding

indictment.[2] Rather than stand trial, the defendant fled to

Mexico and did not return until 2010. In 2012, the defendant

was tried by jury in the Superior Court. The judge instructed

the jury, sua sponte and over the defendant's objection, on the

lesser included charge of indecent assault and battery as to

seven counts reflecting the earliest incidents of alleged penile

and digital penetration.[3] The judge reasoned that, "given [the

victim's] state of development . . . there may be an issue as to

whether there was penetration or not. That does not include

---

[2] The indictments were based on the following periods: (i) March 1, 1980, to July 31, 1982; (ii) July 1, 1983, to November 30, 1983; (iii) February 1, 1984, to April 30, 1984; (iv) January 1, 1985, to August 31, 1985; (v) March 1, 1986, to May 31, 1988; and (vi) June 1, 1988, to November 1, 1989. The gaps between the indictments represented the various periods in which the victim was not living with the defendant. The victim lived with her father for approximately ten months, in a foster home for approximately four months, and with her grandmother for ten weeks. At other points, the victim's mother moved the family away from the defendant out of fear for herself and her children. On each occasion, however, they resumed living with the defendant, at which time, the abuse of the victim resumed as well.

[3] The jury were given special verdict slips listing the lesser included offense with respect to the following charges: charge no. 2 (fingers in genital opening between March 1, 1980, and July 31, 1982); charge no. 3 (penis in genital opening between March 1, 1980, and July 31, 1982); charge no. 5 (fingers in genital opening between July 1, 1983, and November 30, 1983); charge no. 8 (fingers in genital opening between February 1, 1984, and April 30, 1984); charge no. 9 (penis in genital opening between February 1, 1984, and April 30, 1984); charge no. 11 (fingers in genital opening between January 1, 1985, and August 30, 1985); and charge no. 12 (penis in genital opening between January 1, 1985, and August 30, 1985).

those charges that specify oral intercourse . . . because there, again, there's not a real issue of penetration there."

The judge also gave what he said was his "traditional instruction" as to what is meant by proof beyond a reasonable doubt.  Defense counsel objected to the instruction, specifically requesting the language of the Webster charge that in order to convict the jurors must feel "an abiding conviction to a moral certainty of the truth of the charges."  The judge overruled the objection and submitted the case to the jury.  During deliberations, the jury asked for clarification of the reasonable doubt standard.  Defense counsel again asked that the jury be given the Webster charge.  The judge again denied the request, electing instead to repeat his initial instruction.

On each of the eighteen counts of statutory rape, the jury found the defendant not guilty.  However, on each of the seven counts of indecent assault and battery on a child, the jury found the defendant guilty.  The defendant was sentenced to three consecutive and three concurrent terms of not less than nine but not more than ten years in the State prison, as well as a consecutive term of five years of probation.

2.  Discussion.  a.  The reasonable doubt instruction.  In a criminal case, due process requires that the Commonwealth prove the defendant's guilt beyond a reasonable doubt. Commonwealth v. Pinckney, 419 Mass. 341, 342 (1995), citing In

re Winship, 397 U.S. 358, 364 (1970). The defendant in this case contends that the judge's charge on reasonable doubt violated the due process clause of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights by diluting the Commonwealth's burden of proof and by shifting it, in part, to the defendant. "A constitutionally deficient reasonable doubt instruction amounts to a structural error which defies analysis by harmless error standards." Pinckney, supra at 342.[4]

"[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Pinckney, 419 Mass. at 342, quoting Victor v. Nebraska, 511 U.S. 1, 5 (1994). However, the words used must "impress[] upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused." Pinckney, supra at 344. See Victor, supra at 15, quoting Jackson v. Virginia, 443 U.S. 307, 315 (1979). In 1850, Chief Justice Lemuel Shaw elaborated on the proof required to create such near certitude:

> "Then, what is reasonable doubt? It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt; because every thing

---

[4] A substantially similar instruction was given in Commonwealth v. Figueroa, 468 Mass. 204, 219 & n.6 (2014). Yet, because the defendant in that case failed to object, we reviewed for a substantial likelihood of a miscarriage of justice. Id. at 221.

relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. The burden of proof is upon the prosecutor. All the presumptions of law independent of evidence are in favor of innocence; and every person is presumed to be innocent until he is proved guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal. For it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it. This we take to be proof beyond reasonable doubt; because if the law, which mostly depends upon considerations of a moral nature, should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether."

Webster, 5 Cush. at 320. These carefully selected words became known as the Webster charge, which, with minor modification, has since been "the preferred and adequate charge on the Commonwealth's burden of proof." Commonwealth v. Watkins, 433 Mass. 539, 546-547 (2001).[5]

---

[5] During the years 1850-1900, the Webster charge received the approval of numerous State supreme courts and the United States Supreme Court. See, e.g., Miles v. United States, 103 U.S. 304, 309, 312 (1880); Mose v. State, 36 Ala. 211, 230-231 (1860); People v. Strong, 30 Cal. 151, 155 (1866); Lovett v. State, 30 Fla. 142, 162-163 (1892); King v. Ahop, 7 Haw. 556, 560-561 (1889); Carlton v. People, 150 Ill. 181, 192 (1894); State v. De Rance, 34 La. Ann. 186, 195 (1882); State v. Staley, 14 Minn. 105, 122-123 (1869); Morgan v. State, 51 Neb. 672, 698-699 (1897); Morgan v. State, 48 Ohio St. 371, 377 (1891);

That is not to say, however, that the Webster charge -- and, in particular, its "moral certainty" language -- has been immune to criticism. In Victor, 511 U.S. at 13-16, the United States Supreme Court traced the lineage of the phrase "moral certainty" and concluded that "the common meaning of the phrase has changed since it was used in the Webster instruction, and it may continue to do so to the point that it conflicts with the Winship standard." Id. at 16. Notwithstanding this admonition, the Court held that, in the context of the Webster charge as a whole, the phrase did not suggest "a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof." Id.

In a concurring opinion in the Victor case, Justice Ginsburg extolled the virtues of the Federal Judicial Center's Pattern Criminal Jury Instruction 21 (1998), which provides, in relevant part:

> "Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

---

Henderson v. State, 14 Tex. 503, 514 (1855); Kollock v. State, 88 Wis. 663, 665-666 (1894).

Victor, 511 U.S. at 27 (Ginsburg, J., concurring), quoting Federal Judicial Center, Pattern Criminal Jury Instruction 21. According to Justice Ginsburg, the "firmly convinced" standard of Instruction 21 represents a marked improvement over the "anachronism of 'moral certainty'" set forth in the Webster charge.  Id. at 26.  Several State supreme courts and Federal Circuit Courts of Appeal have likewise endorsed Instruction 21.[6]

Here, the trial judge's instruction on reasonable doubt, which is set forth in the margin,[7] incorporated elements of both

---

[6] See, e.g., United States v. Artero, 121 F.3d 1256, 1258 (9th Cir. 1997), cert. denied, 522 U.S. 1133 (1998); United States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995); United States v. Williams, 20 F.3d 125, 131-132 & n.4 (5th Cir.), cert. denied, 513 U.S 891 (1994); State v. Portillo, 182 Ariz. 592, 596 (1995); Winegeart v. State, 665 N.E.2d 893, 902 (Ind. 1996); State v. Frei, 831 N.W.2d 70, 78-79 (Iowa 2013); State v. Reyes, 116 P.3d 305, 314-315 (Utah 2005).

[7] The judge explained reasonable doubt to the jury as follows:

> "The term is often used and it probably is pretty well understood by jurors, but it's not easy for judges to define it to jurors. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, for everything in the lives of human beings is open to some possible or imaginary doubt.

> "On the other hand, it is not enough for the Commonwealth to establish a probability, even a strong probability, that the defendant is more likely to be guilty than not guilty. That is not enough.

> "So what is proof beyond a reasonable doubt?  Well, ladies and gentlemen, proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases, the

the Webster charge and Instruction 21.  Notably, he omitted the

"moral certainty" and "abiding conviction" language found in the

Webster charge and, in its place, inserted the "firmly

convinced" and "real possibility" language found in Instruction

21.

The defendant argues that the firmly convinced standard is

too similar to the clear and convincing evidence standard, which

sets the burden of proof higher than a preponderance of the

evidence but lower than proof beyond a reasonable doubt.  See

Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 871

(1975).  This position finds support in State v. Perez, 90 Haw.

113, 128-129 (Ct. App. 1998), aff'd in relevant part, 90 Haw.

65, 67 (1999).  In that case, the Intermediate Court of Appeals

of Hawaii opined that "it is possible to be firmly convinced of

a fact, yet still retain a reasonable doubt."  Id. at 128.

Under Hawaii law, the clear and convincing evidence standard is

satisfied by a "firm belief of conviction."  Id.  Given the

similarity of that phrase to the phrase "firmly convinced," the

court concluded that the latter communicated a burden of proof

---

law does not require proof that overcomes every possible
doubt.  If, based on your consideration of the evidence,
you are firmly convinced that the defendant is guilty of
the crime charged, you must find him guilty.  If, on the
other hand, you think there is a real possibility that the
defendant is not guilty, you must give him the benefit of
the doubt and find him not guilty.  This is what we mean by
proof beyond a reasonable doubt."

below proof beyond a reasonable doubt as required under the due process clause of the Hawaii State Constitution. Id. at 129.

The reasoning of the Perez case has not gained traction in other jurisdictions. Some courts have distinguished the Perez case as unique to Hawaii law. See, e.g., Williams v. State, 724 N.E.2d 1093, 1096 & n.2 (Ind. 2000). In State v. Jackson, 283 Conn. 111, 120-124 (2007), the Connecticut Supreme Court flatly rejected it, noting the growing support for Instruction 21 and the unlikelihood that jurors in a criminal case even would be aware of the clear and convincing standard. Moreover -- and akin to the Supreme Court's analysis of moral certainty in Victor -- the Jackson court observed that, in the context of the entire charge, there was not a reasonable likelihood that use of the phrase "firmly convinced" lowered the prosecution's burden of proof. Jackson, 283 Conn. at 124-125.

We join those courts in declining to follow the Perez case. In addition to Justice Ginsburg's endorsement of Instruction 21, see Victor, 511 U.S. at 26-27, the Federal Courts of Appeals have consistently upheld it under the due process clause. See, e.g., United States v. Rodriguez, 162 F.3d 135, 146 (1st Cir. 1998), cert. denied, 526 U.S. 1152 (1999); United States v. Artero, 121 F.3d 1256, 1258 (9th Cir. 1997), cert. denied, 522 U.S. 1133 (1998); United States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995); United States v. Williams, 20 F.3d 125, 131-

132 & n.4 (5th Cir. 1994), cert. denied, 513 U.S. 891 (1994); United States v. Taylor, 997 F.2d 1551, 1557 (D.C. Cir. 1993). It bears noting, however, that the question under the Federal Constitution "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard." Victor, 511 U.S. at 6. In contrast, in evaluating a reasonable doubt instruction under art. 12, we employ a standard that is more favorable to the criminal defendant, looking instead "for possible misunderstandings by reasonable jurors." Commonwealth v. Rosa, 422 Mass. 18, 27 n.10 (1996), and cases cited. We do not perceive such a possibility in this case.

Unlike the Hawaii standard for clear and convincing evidence, our cases and instructions on clear and convincing evidence are not cast in terms of the "firmness" of the jury's conclusions. Rather, the instructions endorsed by this court in Callahan v. Westinghouse Broadcasting Co., 372 Mass. 582, 588 (1977), inform the jury that:

> "The burden [of persuasion] is not a burden of convincing you that the facts which are asserted are certainly true or that they are almost certainly true, or are true beyond a reasonable doubt. It is, however, greater than a burden of convincing you that the facts are more probably true than false. The burden imposed is to convince you that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. If then you believe upon consideration and comparison of all the evidence in the case that there is a

> high degree of probability that the facts are true you must find that the fact[s] have been proved."

Id. at 588 n.3, quoting McBaine, Burdens of Proof: Degrees of Belief, 32 Cal. L. Rev. 242, 263-264 (1944). Even if the jury in this case were familiar with the clear and convincing evidence standard, they specifically were instructed that even a "strong probability" of the defendant's guilt would not support a conviction. See Jackson, 283 Conn. at 123-124 (jury unlikely to confuse firmly convinced standard with clear and convincing standard).

Moreover, we disagree with the defendant that requiring a "firm" conviction of guilt sets a lower burden of proof than requiring an "abiding" conviction. The word "firm" is defined as "not subject to change, revision, or withdrawal," "fixed," "settled," "definite," and "established." Webster's Third New International Dictionary 856 (2002). The word "abiding" is defined as "continuing or persisting in the same state without changing or diminishing." Id. at 3. In short, the words convey the same concept to the jury. Viewed in context, we do not think a reasonable juror would have misunderstood the Commonwealth's burden to be anything less than proof beyond a reasonable doubt.

We also disagree with the defendant that the "real possibility" language diluted and shifted the burden of proof in

this case.  In Rodriguez, 162 F.3d at 145, the jury were instructed that "[e]verything in our common experience is open to some possible or imaginary doubt. . . . On the other hand, if you think there is a real possibility that the defendant is not guilty of the charges, you must give the defendant the benefit of that doubt and find him not guilty."  The court explained that a "trial judge may require a 'real possibility' of doubt because '[a] fanciful doubt is not a reasonable doubt.'"  Id. at 146, quoting Victor, 511 U.S. at 17.  Viewing the charge in its totality, the court concluded that "the likelihood of juror confusion or mistake [was] extremely remote."  Rodriguez, supra.  See Victor, 511 U.S. at 27 (Ginsburg, J., dissenting) ("'firmly convinced' standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a 'real possibility' that the defendant is innocent").

In State v. Putz, 266 Neb. 37, cert. denied, 540 U.S. 1013 (2003), the jury were "instructed several times that the burden of proof rested on the State, and . . . explicitly told that this burden never shifts."  Id. at 48.  The Nebraska Supreme Court concluded that in light of "the context of the overall charge to the jury considered as a whole, the jury could not have interpreted the 'real possibility' language as shifting the burden of proof to [the defendant]."  Id.  See Williams, 724

N.E.2d at 1096, quoting Taylor, 997 F.2d at 1557 ("the trial court had 'charged the jury on the presumption of innocence and the government's burden of proof, thus eliminating any concern that the jury might think the defendant was required to show a "real possibility" of his own innocence'").

Here, the instructions accompanying the "real possibility" language were not unlike those in the Rodriguez and Putz cases. The jury were instructed that "[p]roof beyond a reasonable doubt does not mean proof beyond all possible doubt, for everything in the lives of human beings is open to some possible or imaginary doubt"; and that "[t]here are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt." The jury also were reminded repeatedly that the Commonwealth bore the sole burden of proof of each of the crimes charged and that the defendant did not have to prove anything. In light of these instructions, it is clear that the phrase "real possibility" was offered in contrast to the possibility of "imaginary doubt." See Rodriguez, 162 F.3d at 146. A reasonable juror listening to the entire charge would not have mistaken the level or locus of the burden of proof.

Consistent with the clear majority view, we conclude that the charge on reasonable doubt given by the judge in this case adequately "impress[ed] upon the [jury] the need to reach a

subjective state of near certitude of the guilt of the accused."
Victor, 511 U.S. at 15, quoting Jackson, 443 U.S. at 315.  See
Welch, "Give Me That Old Time Religion": The Persistence of the
Webster Reasonable Doubt Instruction and the Need to Abandon It,
48 New Eng. L. Rev. 31, 44-45 (2013) (collecting cases).  As
such, the instruction met the minimum requirements of due
process under the Fourteenth Amendment and art. 12.  See Victor,
511 U.S. at 15; Pinckney, 419 Mass. at 344.

Yet, mere threshold adequacy is not a sufficient basis to
endorse an instruction of such importance -- particularly where
a preferable alternative is readily available.  See State v.
Bennett, 161 Wash. 2d 303, 315 (2007) (en banc) ("While the
instruction may meet constitutional muster, it does not mean
that it is a good or even desirable instruction").  The
reasonable doubt standard "provides concrete substance for the
presumption of innocence -- that bedrock 'axiomatic and
elementary' principle whose 'enforcement lies at the foundation
of the administration of our criminal law.'"  Winship, 397 U.S.
at 363, quoting Coffin v. United States, 156 U.S. 432, 453
(1895).

In Bennett, 161 Wash. 2d at 312-313, the Supreme Court of
Washington reviewed a similar reasonable doubt instruction
derived from Instruction 21.  Finding no constitutional error,
the court affirmed the judgment of conviction.  Id. at 318.

Nonetheless, the court observed that, "[e]ven if many variations of the definition of reasonable doubt meet minimal due process requirements, the presumption of innocence is simply too fundamental, too central to the core of the foundation of our justice system not to require adherence to a clear, simple, accepted, and uniform instruction." Id. at 317-318. Relying on its inherent supervisory power, the court then directed the Washington trial courts to use only the approved pattern jury instructions on proof beyond a reasonable doubt. Id. at 318.

We agree with the reasoning of the Bennett case. We have cautioned that "[w]here issues as important as reasonable doubt are concerned, judges would do well to follow approved models," Commonwealth v. Riley, 433 Mass. 266, 271 n.9 (2001), quoting Commonwealth v. Burke, 44 Mass. App. Ct. 76, 81 (1997), and that individualized embellishments among judges "can only create uncertainty and breed needless appeals." Commonwealth v. Therrien, 371 Mass. 203, 208 (1976). Although we have previously declined to require the use of particular words, e.g., Commonwealth v. Powell, 433 Mass. 399, 405 (2001), such a requirement is well within the scope of our general superintendence power over the courts. See G. L. c. 211, § 3; Commonwealth v. DiGiambattista, 442 Mass. 423, 448 (2004) (mandating jury instruction pursuant to superintendence power).

For more than a century, the Webster charge has served as the gold standard against which instructions on reasonable doubt have been measured.  See Watkins, 433 Mass. at 546-547.  The enduring virtue of the Webster charge has been that it conveys to the jury not only the degree of certitude required, but also "the proper solemn consideration," in reaching a judgment of conviction.  Rosa, 422 Mass. at 29.  Indeed, it is "hard to imagine, without recourse to prolixity, a charge more reflective of the solemn and rigorous standard intended."  Lanigan v. Maloney, 853 F.2d 40, 43 (1st Cir. 1988), cert. denied, 488 U.S. 1007 (1989).

The air of solemnity imparted by the Webster charge underscores the moral consequence of sitting in judgment of one's peers, while "prevent[ing] the jury from disregarding the high standard of proof required or from improperly determining guilt based on the ethics or morality of the defendant's conduct."  Watkins, 433 Mass. at 547.  The jury aptly have been described as "the oracle of the citizenry in weighing the culpability of the accused, and should [they] find him guilty [they] condemn[] him with the full legal and moral authority of the society."  United States v. Gilliam, 994 F.2d 97, 101 (2d Cir.), cert. denied, 510 U.S. 927 (1993).  The United States Supreme Court has deftly explained how a juror's duty to

determine the facts intertwines with his or her moral authority to determine the defendant's guilt:

> "Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. . . . Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out conscientiously for acquittal.  When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment.  Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault."

Old Chief v. United States, 519 U.S. 172, 187-188 (1997), citing Gilliam, 994 F.2d at 100-102.  We conclude that it would be imprudent to endorse a reasonable doubt instruction that glosses over the moral underpinnings of the jury's work in a criminal case, and we decline to do so.

We appreciate the risk, articulated by the United States Court of Appeals for the First Circuit, that "[m]oral certainty could be interpreted to mean that the certainty is based on a feeling, i.e., moral conviction, rather than facts."  United States v. Indorato, 628 F.2d 711, 721 n.8 (1st Cir.), cert. denied, 449 U.S. 1016 (1980).  Accordingly, we have recognized

that "references to 'moral certainty' made in isolation and without further explanation may amount to an erroneous instruction on reasonable doubt." Commonwealth v. Denis, 442 Mass. 617, 622 (2004). By the same token, our cases hold that the "use of the term does not constitute reversible error when the instruction includes other language giving the term an appropriate context." Id. Although the traditional Webster charge has been and continues to be a constitutionally sufficient source of such context, we are mindful of the criticism surrounding some of the outmoded language employed therein.[8]

For all of these reasons, we now exercise our inherent supervisory power to require a uniform instruction on proof beyond a reasonable doubt that uses more modern language, but preserves the power, efficacy, and essence of the Webster charge. G. L. c. 211, § 3. We conclude that the model Webster charge nearly accomplishes this task, but would benefit from

---

[8] See Victor v. Nebraska, 511 U.S. 1, 23 (1994) (Kennedy, J., concurring) ("It was commendable for Chief Justice Shaw to pen an instruction that survived more than a century, but, as the Court makes clear, what once might have made sense to jurors has long since become archaic"); see also Welch, "Give Me That Old Time Religion": The Persistence of the Webster Reasonable Doubt Instruction and the Need to Abandon It, 48 New Eng. L. Rev. 31, 31-32 (2013) ("Despite the Supreme Judicial Court's reverence for the definition of 'reasonable doubt' as described in the 1850 Commonwealth v. Webster decision, courts should use the cut and paste feature on their word processors, abandon the outmoded portions of that instruction, and define this most important concept in comprehensible, everyday language").

further clarification of the phrase "moral certainty."  See

Instruction 2.180 of the Model Jury Instructions for Use in the

District Court (2009).  Therefore, going forward, Massachusetts

judges sitting on criminal trials are to instruct the jury as

follows:

> "The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant is guilty of the charge(s) made against him (her).

> "What is proof beyond a reasonable doubt?  The term is often used and probably pretty well understood, though it is not easily defined.  Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, for everything in the lives of human beings is open to some possible or imaginary doubt.  A charge is proved beyond a reasonable doubt if, after you have compared and considered all of the evidence, you have in your minds an abiding conviction, to a moral certainty, that the charge is true. When we refer to moral certainty, we mean the highest degree of certainty possible in matters relating to human affairs -- based solely on the evidence that has been put before you in this case.

> "I have told you that every person is presumed to be innocent until he or she is proved guilty, and that the burden of proof is on the prosecutor.  If you evaluate all the evidence and you still have a reasonable doubt remaining, the defendant is entitled to the benefit of that doubt and must be acquitted.

> "It is not enough for the Commonwealth to establish a probability, even a strong probability, that the defendant is more likely to be guilty than not guilty.  That is not enough.  Instead, the evidence must convince you of the defendant's guilt to a reasonable and moral certainty; a certainty that convinces your understanding and satisfies your reason and judgment as jurors who are sworn to act conscientiously on the evidence.

> "This is what we mean by proof beyond a reasonable doubt."

In consequence of this decision, the traditional Webster charge should no longer be used as the instruction on reasonable doubt in this Commonwealth.[9]

Relying on Commonwealth v. Adjutant, 443 Mass. 649, 666-667 (2005), the defendant contends that he is entitled to the benefit of this new instruction because he preserved the issue below and argued for it on appeal. It is clear, however, that "there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively." Commonwealth v. Dagley, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005). In this vein, the Commonwealth casts the Adjutant case as an exception applied only in the context of some prejudicial error otherwise avoidable by application of the new rule.

In the Adjutant case, a defendant on trial for manslaughter was precluded from introducing evidence of the victim's prior acts of aggression. The court created a new rule of evidence allowing trial judges the "discretion to admit evidence of specific acts of prior violent conduct that the victim is

---

[9] It follows that the model instructions on reasonable doubt presently in effect, as well as the instructions on reasonable doubt found in Martin Glennon & O'Sullivan Smith, Instructions Common to All Criminal Cases, Massachusetts Superior Court Criminal Practice Jury Instructions § 1.1 (Mass. Cont. Legal Educ. 2d ed. 2013), should no longer be used.

reasonably alleged to have initiated, to support the defendant's claim of self-defense." Adjutant, 443 Mass. at 664. Had this new rule been applied at trial, "it may have been enough to create reasonable doubt of the defendant's guilt." Id. at 666. Given that the defendant argued for the new rule on appeal, we concluded that he was entitled to a new trial with the benefit of our decision.

We are persuaded that the Adjutant case is distinguishable and that the defendant is not entitled to the exception triggered by the circumstances of that case. Unlike in Adjutant, here we are not concerned that in the absence of the new rule there may have been a miscarriage of justice because, as explained above, a reasonable jury would not have misunderstood the reasonable doubt instruction that was given. To the extent that the omission of the "moral certainty" and "abiding conviction" language stripped that instruction of the solemnity so strongly reinforced by the Webster charge, we "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." Commonwealth v. Sellon, 380 Mass. 220, 231-232 (1980).

Although, in other circumstances, we have disapproved of instructions that "trivialize the awesome duty of the jury to determine whether the defendant's guilt was proved beyond a reasonable doubt," Commonwealth v. Ferreira, 373 Mass. 116, 129

(1977), in this case, other aspects of the charge adequately expressed the seriousness of the proceedings to the jury.[10] The defendant suffered no prejudice by the instructions given. Contrast Adjutant, 443 Mass. at 666. The only commonality between this case and the Adjutant case is the successful request for a new rule, which, standing alone, is insufficient to merit a retroactive application.

---

[10] For example, the judge instructed the jury:

"You have heard the closing arguments of counsel, you have heard all the evidence, and you are about to decide this case. But I think it's appropriate for you and I to stand alone, together in this courtroom, to reflect upon our roles in this trial. You have noticed that whenever you come into the courtroom, everyone else stands up. Why do they show you that sign of respect? . . . It's out of respect for your role here. Because you and I are the only ones who have taken an oath to decide this case. I've taken an oath to decide the legal aspects of the case fairly. You have taken an oath to decide the facts of this case fairly.

"Now, ladies and gentlemen, that is a burden that we place on you, because no one likes to sit in judgment. No one does. But we know, ladies and gentlemen, that you can meet that burden, that you can handle that responsibility. And why do we know that? Well, history teaches us that. Because for over 200 years here in Essex County, jurors just like you have been listening to evidence just like this, looking at and listening to the same types of witnesses, the same types of evidence, and then using your common sense to determine, what do I believe, what is important, what's a reasonable inference to draw. They search for the truth. And there's no reason to think you can't do that just as well as all those jurors who have come before you. You are asked to be responsible citizens, placed in a responsible situation, and there is no reason to think you can't do it."

b. Lesser included offense instruction. The defendant argues that the judge committed error by instructing the jury on the lesser included offense of indecent assault and battery. Although the defendant seems to have invited the instruction by moving for a required finding of not guilty on grounds of insufficient evidence of penetration, he preserved the issue by objecting to the instruction. See Commonwealth v. Berry, 431 Mass. 326, 334 (2000).

"Our case law on lesser included offense instructions has consistently inquired 'whether the evidence at trial presents a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense.'" Commonwealth v. Porro, 458 Mass. 526, 536 (2010), quoting Commonwealth v. Donlan, 436 Mass. 329, 335 (2002). Where, as here, "the issue is whether the judge erred in giving a lesser included instruction rather than whether the judge erred by failing to give such an instruction: it is not error to give a lesser included offense instruction 'if on any hypothesis of the evidence, the jury could have found the defendant[] guilty of [the lesser included offense]' and not guilty of the greater offense." Porro, supra at 537, quoting Commonwealth v. Thayer, 418 Mass. 130, 132 (1994). "In determining whether there was a hypothetical basis for the jury to conclude that the defendant was guilty of the lesser included offense, but not the offense

charged, the judge may consider the possibility that the jury reasonably may disbelieve the witnesses' testimony regarding an element required of the greater, but not the lesser included, offense." Porro, supra.

The defendant points out that, in Donlan, 436 Mass. at 337-338, we held that an indecent assault and battery instruction was inappropriate on similar facts. Yet, in that case, error was alleged in the omission of a lesser included offense instruction, id. at 338, a posture in which relief "depends not only on the existence of a possible factual scenario justifying a conviction of the lesser but not the greater offense, but also on evidence of a dispute at trial about the element that distinguishes the two offenses." Porro, 458 Mass. at 536. In contrast, we have held that giving "a lesser included instruction is not error where, for example, a jury reasonably could be convinced by the victim's testimony that the defendant sexually assaulted her but not be convinced beyond a reasonable doubt that penetration occurred, even where the victim was not cross-examined as to penetration and the defense attorney did not mention it in closing argument." Id. at 537 n.10.

The Commonwealth submits that this case fits squarely within the paradigm described in the Porro case, as the victim testified not only to acts of penetration, but also to more general contact between the defendant and the victim's vaginal

area.  Defense counsel's strategy was to suggest that the victim fabricated the allegations of abuse in order to protect her mother from the physical abuse being inflicted on her by the defendant.  The Commonwealth reasons that this strategy was partially successful, as the verdicts suggest that the jury credited the allegations of abuse but discredited the testimony regarding penetration.

The defendant contests that conclusion, reciting the familiar rule that "the jury's right to selective credibility does not permit [them] to distort or mutilate any integral portion of the testimony to permit them to believe an unfounded hypothesis."  Commonwealth v. Perez, 390 Mass. 308, 314 (1983), S.C., 442 Mass. 1019 (2004).  The defendant cites Commonwealth v. Zanetti, 454 Mass. 449, 458 (2009), which we find instructive.  In that case, we held that the jury reasonably could not believe testimony that the shooter was positioned to the right of the victim, where the evidence unequivocally established that the victim was shot in the left side of the head.  Id.

Here, the defendant characterizes the case put to the jury as "a pure 'up or down' question on credibility -- whether the alleged conduct did or did not occur."  We disagree.  Unlike in the Zanetti case, evidence of penetrating contact would not have made it illogical for the jury in this case to conclude that

there was also evidence of nonpenetrating contact.  If there was indeed evidence of both nonpenetrating and penetrating contact, the jury were free to believe the former and disbelieve the latter.  See Porro, 458 Mass. at 537 n.10; cf. Commonwealth v. Hunton, 168 Mass. 130, 132 (1897) ("jury are absolutely free to believe what is unfavorable to a prisoner in his statement, and to disbelieve all that is favorable, if the character of the statement has that effect upon their minds").  We therefore turn to the evidence put before the jury.

With respect to the charges in question, there was certainly evidence of penetration.  The question, then, is whether there also was sufficient evidence to support inferences of indecent touching that fell short of penetration.  On the second and third charges, the victim testified that the defendant "touched me with his fingers on my vaginal area" and "rubb[ed] up against me with his penis area."  On the fifth charge, she testified that, "it started right back up -- the abuse on me. . . .  [T]he touching, the fondling, the above, all that stuff started again."  On the eighth and ninth charges, she testified that the abuse was "[m]ore of the same -- touching, fond -- fondling . . . rubbing his penis on me -- my butt . . . [a]nd in my vagina area."  On the eleventh and twelfth charges, she testified that it was "[m]ore of the same"; "it was never anything really different"; and [i]t was a lot of groping, like,

I don't know how to say -- rubbing against my -- on my butt [and] . . . on my -- in my -- like in between my legs from behind, penis to my vagina."

Viewing the victim's testimony as a whole, we agree with the Commonwealth that a reasonable jury could have found indecent touching that fell short of penetration.  Although the victim did not testify expressly to nonpenetrating contact during each period, the jury could have inferred such contact from her testimony that "the above, all that stuff started again," that the touching was "more of the same," and that it "was never anything really different."  The jury also could have inferred that the defendant's penis came into contact with the victim's vaginal area -- without penetrating her vagina -- when he was rubbing up against her and placing his penis between her legs and buttocks, a finding consistent with other testimony that he "rubb[ed] his penis . . . in [her] vagina area."

Moreover, with respect to the testimony regarding actual penetration, the jury properly could have considered the age of the victim, who was between six and fifteen years old, depending on the indictment.  The jury also could have had reasonable doubt as to the extent of the contact described by the victim. For example, at one point the victim testified that the defendant would "put[] his fingers inside me in my vagina." When the prosecutor sought clarification:  "His fingers, you

said, in your vagina?," the victim replied:  "Not -- not completely penetrating yet."  The prosecutor again asked for clarification: "Not yet?," to which the victim repeated:  "Not yet."  A reasonable juror could have taken this to mean that the victim was exaggerating when she stated that the defendant placed his fingers "inside [her] in [her] vagina."

Although exaggeration was not the defendant's precise theory of the case, it is not necessarily inconsistent with that theory.  The jury may have thought that the victim exaggerated the penetration aspects of her account because her first complaint -- that the defendant "touched" her -- failed to induce her mother to leave the defendant.  Contrast Zanetti, 454 Mass. at 458.  We need not tarry long, however, on the jury's deliberative process.  "It is sufficient that the evidence permitted the inference which the jury obviously drew . . . ."  Commonwealth v. Nelson, 370 Mass. 192, 203 (1976).  Compare Porro, 458 Mass. at 537 n.10 ("jury reasonably could be convinced by the victim's testimony that the defendant sexually assaulted her but not be convinced beyond a reasonable doubt that penetration occurred"), with Commonwealth v. Roderiques, 462 Mass. 415, 425 (2012) ("no view of the evidence" supported instruction on lesser included offense).  It was not error for the judge to submit the lesser included offenses to the jury.

Judgments affirmed.