NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

24-P-1364                                        Appeals Court

COMMONWEALTH  vs.  LUIS A. ORTIZ.

No. 24-P-1364.

Worcester.      October 27, 2025. – January 22, 2026.

Present:  Meade, Neyman, & Walsh, JJ.


Breaking and Entering.  Destruction of Property.  Larceny.
    Firearms.  Evidence, Firearm, Identification, Inference.
    Identification.  Deoxyribonucleic Acid.


    Complaint received and sworn to in the Leominster Division
of the District Court Department on September 2, 2022.

    The case was heard by Mark E. Noonan, J.


    Kevin P. DeMello for the defendant.
    Anne S. Kennedy, Assistant District Attorney, for the
Commonwealth.


    NEYMAN, J.  Following a jury-waived trial in the District

Court, the defendant, Luis A. Ortiz, was convicted of breaking

and entering a building in the nighttime with intent to commit a

felony, malicious destruction of property valued in excess of

$1,200, and larceny of a firearm.  On appeal, he contends that

the existence of his deoxyribonucleic acid (DNA) on a latex glove found near the crime scene was insufficient to establish that he had committed the crimes. We conclude that the DNA evidence combined with the other evidence presented by the Commonwealth was sufficient to identify the defendant as the perpetrator of the crimes and thus affirm.

Background. Where the defendant challenges the sufficiency of the evidence, we summarize the evidence in the light most favorable to the Commonwealth, reserving certain details for discussion. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

On the evening of March 22, 2019, the victim went out after work "for just a short dinner." When he returned to his home in Leominster around 8 or 8:30 P.M., he saw that the "downstairs door was open," a drawer was open, and his upstairs bedroom was "in shambles." He noticed myriad items missing from that bedroom including several firearms, "a good amount of rolled change," a small safe containing another firearm and approximately $6,000, other personal items, and ammunition.[1] Near the sliding glass back door to the house "where it looked like the door had been tried to be pried open," he noticed shoeprints in the mud, and a "tire lug wrench" that he had not

---

[1] The victim had a license to carry firearms.

seen prior to that evening.  The "glass slider door had been forcibly removed from the track."

The victim contacted the police and, at approximately 9:30 P.M. the same day, Officer Laurinda Dion responded to the home.  The victim walked Officer Dion through the house and "started pointing out things that were missing."  Officer Dion saw the glass sliding door that had been removed and noticed the shoeprints in the mud.  At Officer Dion's request, Detective Oswaldo Ramos arrived "to process the scene overall."  Detective Ramos later returned to the scene and took a "casting impression" of the "foot impression that was left behind adjacent to the area where the break[-in] had taken place by the sliding glass doors."[2]  That shoeprint measured size eleven to eleven and one-half inches.

Two days after the incident, the victim's girlfriend and her friend were walking from the backyard of the victim's home on a path into the adjacent woods that led from the home to the street further up the road.  On that path, they "saw things."  Joined by the victim, they found the handle from the victim's rifle case, a plastic package containing one hundred rounds of ".22 [caliber] ammunition" taken from the victim's home, and

---

[2] Photographs of the shoeprint taken by Detective Ramos were admitted in evidence at trial.

four purple or lavender latex gloves "up by the side of the road right inside the woods line," 150 feet from the house.[3]  The fingertip from one of the latex gloves was found in the woods approximately ten feet from the other pieces of evidence including the box of ammunition.  The victim also found two small pieces of the same color latex gloves under some plastic pallets behind his house by "where you come out of the house"; the victim had not moved the pallets for "a few years."  "It looked like [the glove] got ripped on something, and actually it just fell through the [pallet] like it's not something that was thrown under there."  Officer Dion collected this evidence, and Detective Ramos submitted the gloves to the Massachusetts State police crime laboratory for testing.  Officer Dion also took photographs of the purple latex glove tip, the box of ammunition, and other evidence at the scene.[4]  DNA testing on the "fingertip glove" found near the strewn ammunition and other evidence matched the DNA profile from a saliva sample taken from the defendant.[5]

---

[3] When the judge announced his finding, he described part of the evidence as a "debris trail of gun handles and ammo and more ammo and pieces of glove and tire irons."

[4] The photographs taken by Officer Dion were admitted in evidence at trial.

[5] At trial, the parties stipulated that on December 15, 2021, the Massachusetts State police crime laboratory conducted

Detective Ramos later contacted the Worcester County house of correction, where the defendant was being held (after the date of the crime and on an unrelated matter), obtained photographs of the defendant's shoes at the house of correction, and confirmed that the defendant had a shoe size of eleven and one-half. Detective Ramos interviewed the defendant at the house of correction. The defendant denied being in Leominster in March of 2019. Detective Ramos also confirmed that the defendant resided in Worcester prior to his incarceration, and that one of the firearms stolen from the victim's home was recovered in Worcester.

Discussion. The sole issue before us is whether the evidence at trial was sufficient to identify the defendant as the perpetrator of the crimes. We apply the familiar Latimore test to determine "whether, after viewing the evidence in the

---

a search of the Combined DNA Index System, "the result of which found that the DNA profile developed by Bode Technology [the entity that processed the DNA evidence from the latex glove] is linked to the DNA profile from the defendant." The stipulation further stated that on July 17, 2023, Bode Technology "received a known saliva standard from the defendant" for comparison, and that Bode Technology "was able to match the DNA profile from the latex glove evidence to the [defendant's] DNA profile." The stipulation also stated that the results "do not determine when the defendant's DNA was deposited on the glove, whether the defendant had most recently handled the glove when it was found, or whether the defendant had directly handled the glove at all." The judge read the stipulation into the record at trial and admitted the stipulation as an exhibit.

light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis and citation omitted). Latimore, 378 Mass. at 677. "If, from the evidence, conflicting inferences are possible, it is for the [fact finder] to determine where the truth lies, for the weight and credibility of the evidence is wholly within [its] province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007), and 460 Mass. 12 (2011). See E.B. Cypher, Criminal Practice and Procedure § 37.10 (4th ed. 2014). "Circumstantial evidence is sufficient to find someone guilty beyond a reasonable doubt and inferences drawn from such circumstantial evidence need only be reasonable and possible; [they] need not be necessary or inescapable" (quotation and citation omitted). Commonwealth v. Davis, 487 Mass. 448, 462 (2021). At the same time, although the fact finder is "permitted to draw rational inferences from the evidence, . . . no essential element of the crime may rest in surmise, conjecture, or guesswork" (citation omitted). Commonwealth v. Lopez, 484 Mass. 211, 216 (2020).

In the present case, the Commonwealth introduced evidence of the presence of the defendant's DNA on a fingertip piece of latex glove found in the woods behind the victim's home. As a general rule, the presence of DNA evidence "on an object alone does not provide sufficient information to determine when the

DNA was deposited on the object." Commonwealth v. Anitus, 93 Mass. App. Ct. 104, 108 (2018). DNA evidence coupled with other evidence, however, may be sufficient to allow a fact finder to find beyond a reasonable doubt that a defendant committed a crime. Id. at 108-109. In circumstances where the only identification evidence consists of the defendant's DNA at the crime scene, the Commonwealth must establish that the DNA was placed there during the commission of the crime. See Commonwealth v. Morris, 422 Mass. 254, 257 (1996) ("If . . . the only identification evidence is the defendant's fingerprint at the crime scene, the prosecution must prove beyond a reasonable doubt that the fingerprint was placed there during the crime"); Anitus, supra (applying rule in Morris to DNA evidence). In other words, the Commonwealth's DNA evidence "must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the [DNA evidence] was [deposited] at a time other than that of the crime" (citation omitted). Anitus, supra at 108. See Commonwealth v. Cuba, 106 Mass. App. Ct. 261, 263-264 (2025), quoting Commonwealth v. Fazzino, 27 Mass. App. Ct. 485, 487 (1989) ("Commonwealth's evidence must 'reasonably exclude[] the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed'"). Here, where the parties stipulated that the DNA laboratory results "do not determine when the defendant's DNA

was deposited on the glove," the Commonwealth was obligated to meet the standard articulated in Morris and Anitus.

Viewed in the light most favorable to the Commonwealth, the evidence at trial was sufficient to identify the defendant as the perpetrator of the crimes. The Commonwealth did not merely introduce evidence of the presence of the defendant's DNA on a portable object that happened to be found at the crime scene. Cf. Commonwealth v. Renaud, 81 Mass. App. Ct. 261, 264 (2012). Rather, the Commonwealth introduced evidence of the presence of the defendant's DNA on the fingertip of the latex glove found in the woods behind the victim's home and adjacent to items that had just been stolen from the victim's home including a box of ammunition and a part of a rifle case belonging to the victim. It was reasonable to infer that the latex glove itself, with the defendant's DNA on it, was an instrument of the crime as it was found on the path leading away from the victim's home, in close proximity to the strewn ammunition and other items stolen from the home. This inference was bolstered by the other pieces of the same color latex gloves found under plastic pallets behind the house, adjacent to the rear sliding glass door entrance to the home. The totality of circumstances here -- including the location and proximity of the latex glove to the home, the location and proximity of the latex glove to the recently stolen items, and the timing of their discovery soon after the crimes -

- established a direct and compelling temporal and schematic nexus to the crime. Indeed, a rational fact finder could have reasonably inferred from this evidence that the perpetrator in the present case broke into the victim's home, used the latex gloves to prevent the deposit of evidence at the home, and discarded the latex glove on the path as he fled the area with the stolen goods. That clear chain of events makes this case closer to Cuba than to the cases relied on by the defendant. Cuba, 106 Mass. App. Ct. at 264-266 (sufficient evidence of identification where only direct evidence that defendant was at crime scene was defendant's fingerprint on exterior of victim's car, which "was, for all intents and purposes, the site of the charged crimes"; no reasonable possibility defendant touched car at any other time than commission of crime; and video footage generally corroborated descriptions of defendant).[6] See, e.g., Anitus, 93 Mass. App. Ct. at 108-109 (not only impossible to discern when DNA was deposited on T-shirt or bandana found near crime scene but also impossible to determine "whether it was the defendant who had most recently handled either object, or indeed [in view of the potential for secondary transfer] whether the defendant had directly handled the T-shirt or the bandana at

_____

[6] Cuba, 106 Mass. App. Ct. at 261, was decided after briefing and oral argument in this case.

all"); Renaud, supra (electronic bank transfer [EBT] card bearing defendant's name found in living room of burglarized house insufficient standing alone to sustain convictions where there was no evidence suggesting that defendant "possessed, and subsequently dropped, his EBT card during the crime"). Cf. Morris, 422 Mass. at 259 (evidence suggested alternative explanation that defendant handled mask while associating with suspects before or after crime).

Moreover, the fingertip of the latex glove bearing the defendant's DNA found discarded near the strewn stolen items had been torn off or ripped, like the two other "small pieces of the same color rubber gloves" that appeared to have been "ripped on something" that were found beneath the pallets outside the rear door of the victim's home. This evidence, viewed in combination with the location of the strewn and scattered stolen items found in the woods leading from the house, tended to suggest that the glove had just been "possessed, and subsequently dropped" after being used "during the crime." Renaud, 81 Mass. App. Ct. at 264. Of further note, the evidence at trial suggested that the latex gloves, unlike the evidence found in other cases relied on by the defendant, had a nondurable quality and were unlikely to have been reused. See, e.g., Morris, 422 Mass. at 257-258 (plastic clown mask); Anitus, 93 Mass. App. Ct. at 108-109 (T-shirt and bandana).

In addition to the foregoing evidence, the Commonwealth introduced evidence of the presence of the size eleven and one-half-inch shoeprint at the crime scene initially seen on the date of the crime, the same as the defendant's shoe size, as well as the subsequent discovery of the stolen firearm in Worcester where the defendant resided. See Fazzino, 27 Mass. App. Ct. at 487-488 (evidence of defendant's fingerprints at scene of break-in coupled with circumstantial evidence including location of fingerprints plus defendant's knowledge regarding point of entry and location of money sufficient to link defendant to crime).

Finally, "[i]t remains for us to consider whether the evidence reasonably exclude[d] the hypothesis that the [DNA] was left at some time prior to the commission of the crime." Cuba, 106 Mass. App. Ct. at 266 (quotation and citation omitted). Here, there was no hint of any suggestion as to how the defendant's DNA could have made its way onto the latex glove, other than by the defendant wearing it and discarding it either going to or coming from the victim's home. Cf. Morris, 422 Mass. at 259. To the contrary, as discussed above, the totality of evidence including the location of the latex glove discarded on the path in close proximity to the home and to the trail of recently stolen items similarly discarded on the path, gave rise to the reasonable inference that the latex glove was used in the

commission of the crimes, and that the DNA was deposited thereon at the time of the offense. Although it is not impossible to imagine that the defendant somehow used or touched the same latex glove at an earlier time, and that same glove somehow made its way to the crime scene in Leominster[7] and was somehow placed or left along the path of the items strewn on the perpetrator's escape route from the home adjacent to the stolen items, the fact finder could conclude that this was not a reasonable inference or possibility. Stated differently, the reasonable inferences supporting the defendant's guilt do not "rest in surmise, conjecture, or guesswork" (citation omitted). Lopez, 484 Mass. at 216. Again, this stands in sharp contrast to the cases upon which the defendant relies. In those cases, it was "at least equally plausible that the defendants had touched the items at some other place and time, and that someone else later transported the items to the crime scene." Cuba, supra at 264-266 (distinguishing Anitus and Morris, and noting that, "[a]lthough it is possible to imagine that the defendant randomly happened upon the victim's car somewhere in Springfield in the days prior to the crime and intentionally or accidentally touched the frame of the driver's side door, this is not a

_____

[7] As we have noted, in his interview with Detective Ramos, the defendant denied being in Leominster in March of 2019.

reasonable possibility").  See <u>Anitus</u>, 93 Mass. App. Ct. at 109 n.11, quoting <u>State</u> v. <u>Freeman</u>, 269 S.W.3d 422, 425 (Mo. 2008) (sufficient basis in <u>Freeman</u> for inference that defendant was present in victim's apartment where defendant's DNA found on piece of toilet paper underneath victim's body in her apartment, and where "opposite inference -- that [d]efendant's DNA arrived on the tissue in some innocent manner -- requires an unlikely series of events").  See also <u>Commonwealth</u> v. <u>Russell</u>, 470 Mass. 464, 477 (2015) ("Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, for everything in the lives of human beings is open to some possible or imaginary doubt").

In these circumstances, a rational trier of fact could have found beyond a reasonable doubt that the defendant's DNA was deposited on the latex glove during the commission of the charged crimes.  Accordingly, the evidence at trial was sufficient to identify the defendant as the perpetrator of the crimes.

<u>Judgments affirmed</u>.