NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11819


COMMONWEALTH  vs.  ANDRE R. BREWER.



Plymouth.     April 6, 2015. – July 24, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Homicide.  Firearms.  Witness, Immunity, Self-
incrimination.  Constitutional Law, Privileges and
immunities, Self-incrimination, Fair trial.  Due Process of
Law, Fair trial.  Fair Trial.  Practice, Criminal, Immunity
from prosecution, Fair trial, Argument by prosecutor.




Indictments found and returned in the Superior Court
Department on June 3, 2011.

The cases were tried before Richard J. Chin, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Leslie W. O'Brien for the defendant.
Robert C. Thompson, Assistant District Attorney, for the
Commonwealth.
Anthony C. Biagioli, of the District of Columbia, & Kirsten
V. Mayer & Chauncey B. Wood, for Massachusetts Association of
Criminal Defense Lawyers, amicus curiae, submitted a brief.

HINES, J.  Based on a shooting that occurred after a party ended in Brockton in 2007, a jury, in March, 2014, convicted the defendant of murder in the second degree, unlawful possession of a firearm, unlawful possession of a loaded firearm, and unlawful possession of ammunition.  Represented by new counsel on appeal, the defendant argues (1) that the denial of immunity to two defense witnesses violated his right to a fair trial and due process of law, as well as his right to present a complete defense; and (2) error in the prosecutor's closing argument.  We affirm the defendant's convictions.

Background.  We recite the facts the jury could have found based on the Commonwealth's case, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), reserving certain details for our discussion of the specific issues raised.  The victim, Jose Gurley, who was seventeen years of age, was shot sometime around 3 A.M. on July 21, 2007, on a street outside a vacant home in Brockton where he had just attended a party.[1]  He did not appear to be the intended victim of the shooting.  Rather, when gunshots erupted, the victim was speaking with one of the young men, Tyson Muzzy, with whom he had gone to the party.  The

---

[1] Some hours after being shot, the victim died at a hospital.  He had two gunshot wounds, one to the lower back and another to his right forearm.  He died as a result of a gunshot wound to his torso with perforation of his spinal cord and aorta.

victim, Muzzy, Dina Willis, Markeen Starks, and Jamar Martin earlier had traveled to the party together from Martin's home. Before that, the victim had visited with his good friend Kashin Nembhard and David Stewart.

Over fifty youths attended the party. A friend of the victim's, Elijah Finch, went to the party with Ronald Woods.[2] There, Finch danced with his former girl friend, Sanovia Chabis, who had gone to the party with her sister. Chabis also danced with Matthew Engram,[3] who had come to the party with his friend Ernst Verdieu.

After the party ended, many youths congregated on the adjacent street. While Chabis was speaking with Engram, Finch interrupted and an argument between the men ensued. Finch was upset that Chabis was speaking with Engram. Chabis decided to leave with her sister and headed to the vehicle in which they had arrived. Engram went to the trunk of his automobile. He testified that he opened his trunk to intimidate Finch, but he intended only to change his sneakers. After he changed his shoes, Engram closed the trunk and stepped onto the sidewalk.

---

[2] Testimony varied regarding how and with whom witnesses went to the party. Kashin Nembhard, for example, testified that Elijah Finch drove him, the victim, and Markeen Starks to the party.

[3] Matthew Engram testified pursuant to a grant of immunity.

[3] Matthew Engram testified pursuant to a grant of immunity.

Concerning what next took place, there were different accounts. Shots were heard, but the number of shots heard varied among the witnesses. Chabis's sister heard five or six gunshots. Chabis heard four gunshots. Muzzy recalled seven. No one stated who the shooter was.

The police charged Engram with being an accessory after the fact, suspecting him of helping the shooter escape by driving him away. The charges later were nol prossed.

During their investigation, police learned from a witness, Iesha Strickland, that the shots had come from Finch's direction. Strickland reported that, after the victim's death, Finch threatened her, struck her friends, and fired a gun at her home. In response to these allegations and investigation concerning them, police commenced charges against Finch, but later dismissed them.

At trial, Engram testified that the defendant was the shooter and that the following occurred.[4] Just before the shooting, the defendant approached Engram and put a gun to his hip and ribs, and told Engram to leave his "homey" alone. The defendant checked to see whether Engram was armed, and then the

---

[4] According to Engram, the shooter wore a white, blue, and yellow striped shirt and jeans. He testified that, at a subsequent time when he was in a house of correction, he identified the defendant's photograph from an array, stating that he was the shooter. Engram stated that the police discarded the materials relating to this identification.

two men agreed that they were "good."  Engram turned to walk
away and heard "pops."  He saw the defendant shoot the victim.
Engram fled in his automobile.  Verdieu went with him, and they
gave a bystander named "Berbi" a ride.[5]  During cross-
examination, Engram acknowledged that in October, 2012, he told
defense counsel that Nembhard had not been present at the scene
of the shooting.

Nembhard testified to the following.  After the party,
Finch had an argument with a man named "Poka" (Nembhard did not
know Poka's real name).  It was a "hood beef," meaning an
argument with another gang.  Poka was in the same gang as
Engram, Verdieu and a person named "Grey."  During the argument
between Finch and Poka, the victim yelled, "Ffrruupp," which,
Nembhard later told police, is an invitation to fight.  Engram
was not involved.  The defendant was standing near Engram.
Before the shooting, Poka said something to the defendant.
After Poka made a statement to the defendant, the defendant
walked through the crowd, pulled out a gun, and fired.  People
ran away.[6]  The defendant was wearing a black hat and T-shirt.

---

[5] Berbick Bitton testified that Engram, whom he had never
met, gave him a ride immediately after the shooting.  Bitton was
a friend of Ernst Verdieu's.  Bitton had "chilled" with the
defendant previously.  He did not see the defendant there that
night.

[6] Kashin Nembhard did not go to police about the shooting
until he was arrested in November, 2010.  When in custody,

Woods, who had known the victim since junior high school, testified that after the party he was standing outside talking to the victim when the victim was shot. Before the shooting, Finch had been arguing with the person who was the disc jockey at the party. Another man, who was wearing a black shirt, shorts, and shoes, was the shooter. The shooter came from behind and said nothing to the victim or to him. At trial, Woods made an in-court identification of the defendant as the shooter. Earlier, after Nembhard had spoken with police, they contacted Woods, who, in November, 2010, selected the defendant's photograph from an array and identified him as the shooter. Woods testified that the shooter fled the scene in a white van and that he (Woods) tried to comfort the victim by holding him.[7]

The defendant did not testify. Defense counsel argued that either Engram or Finch had killed the victim while shooting at

---

Nembhard selected from an array a photograph of the defendant as the man who was the shooter. In exchange for his cooperation and information provided to police regarding the shooting and other cases, he received a reduced sentence in connection with certain Federal court criminal charges. In his final charge, the judge correctly instructed the jury in accordance with Commonwealth v. Ciampa, 406 Mass. 257, 264-266 (1989). See Commonwealth v. Andrade, 468 Mass. 543, 550-551 (2014).

[7] The victim's mother testified that during the early morning of July 21, 2007, Ronald Woods, Markeen Starks, and Marcus Wyatt came to her home to inform her that her son had been shot. Woods was covered in blood and was crying.

each other.  Defense counsel attacked the credibility of Engram,
Nembhard, and Woods.

Discussion.  1.  Denial of immunity to defense witnesses.
The defendant contends that his State and Federal constitutional
rights to a fair trial and due process, as well as his right to
present a complete defense, were abridged when the trial judge
declined to grant immunity to two potential defense witnesses:
Verdieu and Stewart.  After the Commonwealth had rested, defense
counsel indicated his intent to call these two witnesses at
trial, but through counsel, each asserted the privilege against
self-incrimination under the Fifth Amendment to the United
States Constitution.[8]  After conducting in camera hearings
pursuant to Commonwealth v. Martin, 423 Mass. 496, 504 (1996),
from which no sealed hearing transcripts were provided to us,
see Pixley v. Commonwealth, 453 Mass. 827, 835 (2009), the judge
determined that each potential witness had a valid privilege and

_____

[8] The Fifth Amendment to the United Constitution provides,
in relevant part, that "[n]o person . . . shall be compelled in
any criminal case to be a witness against himself."  Article 12
of the Massachusetts Declaration of Rights similarly provides
that "[n]o subject shall . . . be compelled to accuse, or
furnish evidence against himself," although we have found that
it provides "broader protection from self-incrimination" than
its Federal counterpart.  See Pixley v. Commonwealth, 453 Mass.
827, 832 n.6 (2009).

could not be compelled to testify.[9] Defense counsel objected, stating that the prosecutor's selective grant of immunity[10] deprived him from presenting exculpatory evidence from these two witnesses. Defense counsel provided an offer of proof. He first explained that he had expected Verdieu to testify, contrary to Engram's testimony, that before the shooting, the defendant had not placed a gun to Engram's body and had not stated to Engram to leave his "homey" alone. Defense counsel further expected Verdieu to testify that he never saw the defendant with a gun and had not seen the defendant shoot the victim. Concerning Stewart, defense counsel expected him to testify that Nembhard never went to the party and had stayed with him instead of attending the party.

Recently, in Commonwealth v. Vacher, 469 Mass. 425, 437, 439-441 (2014), we rejected constitutional challenges to the witness immunity statute, G. L. c. 233, §§ 20C-20E, that were based on the fact that, as relevant here, an order granting immunity to a trial witness may be issued only "at the request

---

[9] The defendant does not challenge the judge's conclusion regarding the assertions of the privilege, thus we have no need for a sealed transcript of the proceedings.

[10] Engram was the only prosecution witness who was granted immunity at trial. There was no explanation in the record concerning whether the prosecutor was asked to consider granting immunity to any other potential witness or witnesses and, if so, the reasons for choosing not to do so.

of the attorney general or a district attorney," id. at 437,

quoting G. L. c. 233, § 20E (a).[11]  We explained:

> "Our jurisprudence has not vested criminal defendants
> with expansive rights vis-à-vis the immunization of
> witnesses.  To the contrary, '[w]e have held, without
> qualification, that a defendant "has no standing to argue
> that the testimony of . . . purportedly immunized witnesses
> [is] the product of improper grants of immunity,"'
> reasoning that '[t]he privilege against self-incrimination
> is a personal right of the witness, and one that the
> witness is in a position to protect by his own
> means.'  Smith v. Commonwealth, 386 Mass. 345, 349 (1982),
> citing Commonwealth v. Simpson, 370 Mass. 119, 121 (1976).
> While a prospective defense witness's assertion of his
> right under the Fifth Amendment . . . could affect a
> defendant's ability to present his defense most
> effectively, the compulsory process provisions of the
> Federal and State Constitutions do not mandate a judicial
> grant of immunity to such a witness as a matter of course.
> See Commonwealth v. Curtis, 388 Mass. 637, 646 (1983),
> S.C., 417 Mass. 619 (1994).  Although we have left open the
> possibility that 'unique circumstances' could require a
> judge to grant a limited form of immunity to a defense
> witness, see id., we have not been presented yet with such
> a scenario.  See [Pixley, 453 Mass. at 834 n.7]."

Vacher, supra at 438-439.  We noted that "[o]ther courts have

recognized that such unique circumstances might emerge 'where

there exists prosecutorial misconduct arising from the

---

[11] In Pixley, 453 Mass. at 835 n.8, we explained that
"[u]nder the Fifth Amendment, a witness may not be compelled to
testify unless the witness is granted use immunity, which
protects the witness from any use of his compelled testimony (or
evidence directly or indirectly derived from his testimony)
against him in a criminal case."  In contrast, "when the
prosecution obtains statutory immunity for a witness, art. 12
requires that the immunity be transactional immunity, granting
immunity from prosecution for any offense 'to which compelled
testimony relates.'"  Id., quoting Attorney Gen. v. Colleton,
387 Mass. 790, 795 & n.4 (1982).

government's deliberate intent to distort the fact-finding process" (quotation and citation omitted). Id. at 439, and cases cited. As correctly noted by the defendant, most Federal courts have taken this same position and, absent a showing of prosecutorial misconduct, decline to grant immunity to a defense witness. See Commonwealth v. Doherty, 394 Mass. 341, 344 n.4 (1985), and cases cited. See also United States v. Mackey, 117 F.3d 24, 27 (1st. Cir.), cert. denied, 522 U.S. 975 (1997) (stating majority rule that Federal courts lack power to compel witness immunity in face of good faith refusal by prosecutor), and cases cited.

The defendant argues that prosecutorial misconduct need not be the sole predicate for a judicial grant of immunity. In support of his argument, he cites to Government of the Virgin Islands v. Smith, 615 F.2d 964, 969-974 (3d Cir. 1980). This case, however, has been overturned and thus offers no support for the defendant's position. See United States v. Quinn, 728 F.3d 243, 252-253 (3d Cir. 2013), cert. denied, 134 S. Ct. 1872 (2014) (concluding that in absence of prosecutorial misconduct, courts lack authority to grant use immunity to defense witness and expressly overturning Smith, supra, decision, noting that immunity is statutory creation within exclusive realm of prosecution).

In addition, the defendant cites to <u>United States</u> v. <u>Straub</u>, 538 F.3d 1147, 1162 (9th Cir. 2008), in which the United States Court of Appeals for the Ninth Circuit held that "for a defendant to compel use immunity the defendant must show that: (1) the defense witness's testimony was relevant; and (2) either (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness, with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial." In applying its conclusion, the court noted that the denial of immunity to the defense witness had the effect of distorting the fact-finding process because the testimony from the one immunized witness was the sole evidence establishing the elements of the crime. <u>Id</u>. at 1163. In this case, we cannot say the same. Although Engram testified pursuant to a grant of immunity and Nembhard testified pursuant to an agreement with the United States Attorney,[12] there also was testimony from Woods

---

[12] Nembhard hoped to receive a favorable sentencing disposition in connection with certain Federal charges against

that the defendant was the shooter.  Thus, denial of immunity to Verdieu and to Stewart to contradict some of the testimony of Engram and Nembhard did not leave a prosecution that depended only on evidence from an immunized witness and a witness arguably seeking to curry favor with the prosecution.

On the facts of this case, a judicial grant of immunity to Verdieu and to Stewart was not required under constitutional principles and, as in Vacher, we find no basis to depart from our established law on this subject.  In addition, we find no "unique circumstances" requiring a grant of judicial immunity to Verdieu and to Stewart.  The following observations inform our decision.

As an initial matter, there has been no showing or argument that the prosecutor's discretion to grant immunity only to Engram was improperly motivated.  In addition, concerning Verdieu's expected testimony, it was relevant, no doubt, to Engram's credibility insofar as it contradicted certain details of what occurred before the victim was shot.  Its exculpatory nature, however, was unclear.  Although Verdieu was expected to say that he did not see the defendant with a gun and did not see the defendant shoot the victim, these statements do not require a conclusion that the defendant did not shoot the victim.

---

him by agreeing to cooperate in this case and in several others.

See Commonwealth v. Smith, 456 Mass. 476, 482 (2010) (fact that witness did not see defendant in area of shooting does not mean that defendant did not shoot victim).  It could have been that Verdieu was not looking at the defendant when shots were fired.  Further, the proffer concerning Verdieu's testimony did not indicate whether Verdieu even saw who shot the victim.  Again, he may have not seen the shooting at all.  The proffer was neither complete nor clear.  We have stated that "if the proffered testimony is found to be ambiguous, not clearly exculpatory, cumulative or . . . relate[s] only to the credibility of the government's witnesses," then judicial immunity is not available.  See Commonwealth v. Drew, 447 Mass. 635, 645 (2006), cert. denied, 550 U.S. 943 (2007), quoting Commonwealth v. Doherty, 394 Mass. 341, 345 (1985).  These principles apply here.

These principles also apply in a slightly different way to Stewart's proffered testimony.  Stewart's expected testimony, that Nembhard never went to the party, was cumulative of Engram's testimony concerning his statements to defense counsel made in October, 2012.  In addition, Nembhard was not an immunized witness[13] and the jury were correctly instructed to

---

[13] In his application for direct appellate review, which we granted, the defendant sought review only with regard to the question of compelled judicial immunity for Verdieu.  In his brief here, the defendant now argues the issue of compelled

examine his testimony with particular care.  See note 6, supra.
See Vacher, 469 Mass. at 440-441 (judge's instructions
concerning factors impacting witness credibility preserved
defendant's right to fair trial in absence of compelled judicial
immunity).  Last, as has been stated, the prosecution did not
satisfy the elements of its case based only on the testimony of
an immunized witness; rather, Woods also testified that the
defendant was the shooter.  Defense counsel was able to
thoroughly cross-examine him (as well as Engram and Nembhard),
and the jury correctly were instructed that they could not
convict the defendant solely on the basis of Engram's testimony.
See id. at 440.  On this record, the judge properly declined to
order immunity to Verdieu and to Stewart outside the prescribed
statutory scheme.

2.  Prosecutor's closing argument.  The defendant argues
that the prosecutor engaged in improper vouching and misstated
the evidence.  Because defense counsel did not object, we review
the prosecutor's closing argument to determine whether there was

---

judicial immunity for David Stewart, asking that we extend the
principles that "prevent the prosecution from denying immunity
to a witness whose testimony directly contradicts that of an
immunized prosecution witness . . . to one whose testimony would
directly contradict that of a witness whom the prosecution has
rewarded with a drastically reduced sentence" (emphasis added).
The defendant cites no precedent where any court has made this
leap, compelling immunity to a defense witness who contradicts
the testimony of a prosecution witness other than an immunized
one, and we decline to do so now.

error, and, if so, whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Smith, 460 Mass. 385, 398 (2011).

"While a prosecutor may not vouch for the truthfulness of a witness's testimony, [Ciampa, 406 Mass. at 265], we consistently have held that, where the credibility of a witness is an issue, counsel may 'argue from the evidence why a witness should be believed.' Commonwealth v. Raposa, 440 Mass. 684, 694-695 (2004)." Smith, 460 Mass. at 399. In context of the prosecutor's entire argument in this case, we conclude that the challenged isolated comment about Woods being a "standup guy" falls into this latter category.

The prosecutor's statement that the jurors had been given "no reason to doubt" Woods, did not, contrary to the defendant's contention, misstate the evidence. The statement was proper argument responsive to defense counsel's argument that Woods was not a credible witness. See Commonwealth v. Chavis, 415 Mass. 703, 713 (1993) ("prosecutor may make a fair response to an attack on the credibility of a government witness").

Last, the judge's careful and clear instructions concerning the role of the closing arguments and how to determine the credibility of witnesses adequately offset any semblance of impropriety, were we to determine that one occurred. See Commonwealth v. Mitchell, 428 Mass. 852, 857-858 (1999).

<u>Conclusion</u>.  For the foregoing reasons, the defendant's convictions are affirmed.

<u>So ordered</u>.