NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-245                                    Appeals Court


COMMONWEALTH  vs.  WALTON VALENTIN.


No. 16-P-245.

Essex.        February 28, 2017. - May 12, 2017.

Present:  Vuono, Carhart, & Kinder, JJ.[1]


Assault by Means of a Dangerous Weapon.  Assault and Battery.
    Stalking.  Protective Order.  Abuse Prevention.  Evidence,
    Hearsay, Unavailable witness.  Witness, Unavailability,
    Self-incrimination, Immunity.  Constitutional Law,
    Confrontation of witnesses, Self-incrimination.  Practice,
    Criminal, Hearsay, Confrontation of witnesses, Required
    finding, Instructions to jury, Reasonable doubt, Question
    by jury.  Reasonable Doubt.



    Indictments found and returned in the Superior Court
Department on January 2, 2014.

    The cases were tried before Richard E. Welch, III, J.


    Robert L. Sheketoff for the defendant.
    David F. O'Sullivan, Assistant District Attorney, for the
Commonwealth.


_____

    [1] Justice Carhart participated in the deliberation on this case prior to his retirement.

KINDER, J.  Following a jury trial in Superior Court, the defendant, Walton Valentin, was convicted of multiple crimes of violence against his former girl friend, whom we shall call Jane.[2]  The jury found him guilty of entering a building with intent to commit a felony, G. L. c. 266, § 17; assault by means of a dangerous weapon, G. L. c. 265, § 15B; aggravated assault and battery in violation of a restraining order, G. L. c. 265, § 15A(c)(iii)[3]; assault and battery, G. L. c. 265, § 13A; stalking in violation of a restraining order, G. L. c. 265, § 43(b); and violations of a restraining order (twelve counts), G. L. c. 209A, § 7.[4]  On appeal, the defendant claims (1) the judge erred in admitting the victim's hearsay statements pursuant to the doctrine of forfeiture of the right of confrontation by wrongdoing; (2) the evidence was insufficient on the charges of stalking, aggravated assault and battery, and entering a building with intent to commit a felony; (3) the judge's instruction on reasonable doubt was error; and (4) the

---

[2] A pseudonym.

[3] The indictment cites G. L. c. 265, § 13(b)(iii), but the language of the indictment charges a violation of G. L. c. 265, § 15A(c)(iii).  No claim is raised regarding this variance.

[4] The defendant was acquitted of charges of assault by means of a dangerous weapon and kidnapping alleged to have occurred on November 9, 2013.

judge abused his discretion in responding to a question from the jury.  We affirm.

Background.  1.  The break-in and assaults.  We summarize the evidence the jury could have found, viewing it in the light most favorable to the Commonwealth.  Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On June 24, 2013, Jane obtained a restraining order prohibiting the defendant from contacting or abusing her.  The order was in effect through January 7, 2014.

In October 2013, Jane began staying at the home of her co-worker and friend, Susan[5], in Lawrence.  On October 28, 2013, Jane and Susan attended a party in Boston.  Following the party, in the early morning hours of October 29, they went to the Chau Chow City restaurant in Boston.  At approximately 4:00 A.M, the defendant appeared at the restaurant uninvited and confronted Jane.

After leaving Chau Chow City at approximately 6:00 A.M., Jane and Susan went to a Boston police department (BPD) station to report the contact with the defendant.  Jane told the police that the defendant slapped her three times at the restaurant.[6] She further reported that the defendant had "keyed" her car, a

---

[5] A pseudonym.

[6] This evidence was admitted through the testimony of a Boston police officer, over objection, pursuant to the doctrine of forfeiture by wrongdoing.

statement corroborated, in part, by the officer's observations of marks on the exterior of the vehicle. While they were at the BPD, the defendant called Susan twice looking for Jane.

Jane and Susan then drove to the Lawrence police department (LPD) where Jane again reported what had occurred at Chau Chow City. She explained that the defendant followed them from Boston to Lawrence. She further reported the telephone calls they had received from the defendant. The calls from the defendant continued while they were at the LPD.

Jane and Susan left the LPD at approximately 7:30 A.M., returned to Susan's apartment, and went to sleep in the same bedroom. At approximately 9:00 A.M. they were awakened by the defendant emerging from the bedroom closet. A struggle ensued. Susan escaped and screamed to the apartment manager that there was someone in the apartment. Susan pointed to the defendant as he ran through the parking lot.[7] Meanwhile, Jane called 911 and reported "I was here sleeping with a girlfriend, at my girlfriend's house, with my girlfriend, and he came into the

---

[7] Surveillance video played for the jury shows the defendant entering the building at 4:46 A.M. Susan is seen descending the stairs at 9:13 A.M., speaking with the property manager and pointing out something in the parking lot. Another camera showed the defendant leaving by way of a rear stairwell at 9:10 A.M.

house, we don't know how, with a knife, and attacked both of us."[8]

Police responded within minutes.  They observed that the door to the apartment was damaged and the interior of the apartment was in disarray.  Broken lamps and pieces of furniture were strewn about, chairs were overturned, and a glass table-top was shattered.  There was swelling on the arms and necks of both women.  Susan appeared disheveled.  She was shaking and crying. She told officers that the defendant appeared at the foot of the bed armed with a knife and that she and Jane had screamed as the defendant made slashing and stabbing motions toward them.  Susan also reported that the defendant smashed her head against the wall.  Susan handed the officers a large knife she retrieved from a closet near the entry to the apartment, which she claimed the defendant had used.

Crying hysterically, Jane told the officers that she awakened to see the defendant standing at the foot of the bed with a knife.  After Jane calmed down, she explained that the defendant had swung the knife in her direction.[9,10]  She, too,

---

[8] The 911 call was admitted under the excited utterance exception to the rule against hearsay.  A redacted tape recording of the call was played for the jury.  Because the recorded 911 call was in Spanish, a written English translation was provided to the jury as the tape was played.

[9] Jane's initial statements were admitted as excited utterances.  The statements regarding the defendant swinging the

reported that the defendant grabbed her and slammed her head against the wall.  She said the defendant fled the apartment when Susan began screaming for help.  Police efforts to locate the defendant that day were unsuccessful.

2.  The alleged abduction.  On November 9, 2013, police responded to the Parkview Inn in Salem, New Hampshire.  They found Jane in one of the rooms.  She was crying and had lacerations on her head.  She reported that the defendant abducted her at gunpoint as she entered her vehicle in Lawrence.  They drove to the Parkview Inn where the defendant directed Jane to pay for a room while he waited in the vehicle.  She told the officers that the defendant struck her multiple times with the firearm while they were in the room.  Eventually she escaped, and the defendant fled in her vehicle.  The next day the vehicle was found parked on the side of the road in Andover, Massachusetts.  Five days later, the defendant was arrested in the Bronx, New York.[11]

Discussion.  1.  Forfeiture by wrongdoing.  Under the doctrine of forfeiture by wrongdoing,

---

knife at her and slamming her against the wall were admitted pursuant to the doctrine of forfeiture by wrongdoing.

[10] Neither Jane nor Susan suffered any knife wounds.

[11] The defendant was acquitted of the kidnapping and assault by means of a dangerous weapon charges, but convicted of violating the restraining order on November 9, 2013.

> "a defendant forfeits, by virtue of wrongdoing, the right
> to object to the admission of an unavailable witness's out-
> of-court statements on both confrontation and hearsay
> grounds on findings that (1) the witness is unavailable;
> (2) the defendant was involved in, or responsible for,
> procuring the unavailability of the witness; and (3) the
> defendant acted with the intent to procure the witness's
> unavailability."

Commonwealth v. Edwards, 444 Mass. 526, 540 (2005). See Mass.

G. Evid. § 804(b)(6) (2017). "A defendant's involvement in

procuring a witness's unavailability need not consist of a

criminal act, and may include a defendant's collusion with a

witness to ensure that the witness will not be heard at trial."

Edwards, supra.

Pursuant to this doctrine, the Commonwealth sought a

ruling, in limine, to admit Jane's hearsay statements as

substantive evidence at trial. The Commonwealth asserted that

the defendant, while incarcerated awaiting trial, had numerous

telephone conversations with Jane in violation of the

restraining order in which he "pressured and threatened [Jane]

about her participation in the case and urged and counseled

[her] about obtaining an attorney so she would not have to

testify." After a pretrial evidentiary hearing, which included

a review of the tape-recorded telephone calls,[12] the judge made

comprehensive findings of fact. The judge concluded that (1)

---

[12] The telephone calls were recorded as a matter of jail
policy.

Jane had a valid privilege under the Fifth Amendment to the United States Constitution not to incriminate herself and was therefore unavailable as a witness; (2) the defendant, in numerous telephone conversations with Jane, suggested to her the idea of not testifying by threats, persuasion, and pressure; and (3) he did so with the intent to procure her unavailability. Based on these findings, the judge allowed the motion in limine as to Jane's statements that he found reliable.

On appeal, the defendant argues it was error to admit Jane's hearsay statements. According to the defendant, collusion to assert a valid Fifth Amendment privilege does not meet the Edwards test if, as in this case, the defendant wanted the witness to testify and the Commonwealth could have immunized her.[13] We are not persuaded. The defendant cites no authority in support of this argument, and we have found none.

Grants of immunity are discretionary at the request of the Commonwealth. Commonwealth v. Figueroa, 451 Mass. 566, 578 (2008) ("Subject to the approval of the court, it is the purview of the prosecutor to seek a grant of immunity . . ."). The question is not whether Jane had a right to refuse to testify, but whether the defendant intentionally procured her

---

[13] By the time of trial, the defendant, through counsel, had changed his position regarding Jane's testimony, apparently assuming that her testimony would now be helpful.

unavailability as a witness.  See Commonwealth v. Szerlong, 457 Mass. 858, 864-865 (2010), cert. denied, 562 U.S. 1230 (2011) (forfeiture by wrongdoing properly applied where defendant married witness with intent to have her exercise spousal privilege).  Here, the evidence established that the defendant had multiple conversations with Jane regarding her testimony, all in violation of the restraining order.  He repeatedly suggested that she tell her lawyer about the Fifth Amendment, so that she would not have to testify.  The judge found that "he did so by way of threats, persuasion, and pressure."  These findings were supported by a preponderance of the evidence.  See Edwards, supra at 542-543 (application of forfeiture by wrongdoing doctrine is a preliminary question of fact subject to proof by a preponderance of the evidence).  Accordingly, the doctrine of forfeiture by wrongdoing was properly applied.

Due process requires that hearsay statements admitted under the doctrine of forfeiture by wrongdoing be reliable.  Szerlong, supra at 866.  Based on the pretrial testimony of the Lawrence police officers regarding the 911 call from Jane, her physical and emotional state upon their arrival, and the condition of the apartment, the judge found that Jane's hearsay statements regarding the break-in and assaults on October 29 were

sufficiently reliable.[14]  This independent corroborating evidence adequately supported the judge's finding.[15]

As an alternative argument, the defendant contends that this is the exceptional case in which the judge should have, sua sponte, granted "equitable immunity" to Jane, so that the jury could hear her testimony.  According to the defendant, the judge must have known that Jane would make "significant retractions" if she testified at trial[16] and proceeding to trial without those retractions would put the defendant at an unfair disadvantage. Put another way, the defendant suggests that without Jane's testimony "the [trial] process was short circuited and [his] constitutional rights were violated."  We disagree.

The Supreme Judicial Court has explained:

---

[14] The judge did not admit all of Jane's hearsay statements. For example, Jane reported that the defendant told her he would send armed men to her mother's home.  The judge found that statement was not sufficiently reliable.

[15] In light of the defendant's acquittal on the kidnapping and assault charges on November 9, 2013, we need not address the reliability of Jane's statements regarding those allegations.

[16] The judge conducted an in camera hearing with Jane and her counsel pursuant to Commonwealth v. Martin, 423 Mass. 496 (1996), to determine whether the invocation of her Fifth Amendment privilege was valid.  Neither defense counsel nor the prosecutor was present.  The transcript of that hearing was sealed, but made available for our review. At argument, counsel acknowledged that the transcript of the hearing was included in the public record on appeal.  Neither party sought an order of impoundment.

> "While a prospective defense witness's assertion of [her] right under the Fifth Amendment . . . could affect a defendant's ability to present his defense most effectively, the compulsory process provisions of the Federal and State Constitutions do not mandate a judicial grant of immunity to such a witness as a matter of course. See Commonwealth v. Curtis, 388 Mass. 637, 646 (1983), S.C., 417 Mass. 619 (1994).  Although we have left open the possibility that 'unique circumstances' could require a judge to grant a limited form of immunity to a defense witness, see id., we have not been presented yet with such a scenario."

Commonwealth v. Brewer, 472 Mass. 307, 312 (2015), quoting from Commonwealth v. Vacher, 469 Mass. 425, 438-439 (2014).  A unique circumstance might arise "where there exists prosecutorial misconduct arising from the government's deliberate intent to distort the fact-finding process."  Brewer, supra, quoting from Vacher, supra (quotations omitted).  Here, the defendant has not argued, much less shown, that the Commonwealth's decision not to immunize Jane was improperly motivated.  Indeed, in light of the defendant's efforts to corrupt the trial process by dissuading Jane from testifying against him, there was good reason for the Commonwealth to be skeptical of her testimony.

Further, it is not clear that Jane's testimony would have been material to the defense.  The transcript of the hearing held pursuant to Commonwealth v. Martin, 423 Mass. 496 (1996), shows Jane made a single false statement regarding the events of

October 29.[17]  Jane stated that she falsely reported that the defendant had broken the door.  She did not retract her statement that the defendant suddenly appeared at her bedside and assaulted her at knifepoint.  To be sure, had Jane testified, the false statement would have undermined her credibility, but judicial immunity is not available when the proffered testimony relates only to the credibility of the government's witnesses.  Brewer, supra at 314.  Therefore, on the record before us, the judge properly declined to grant "equitable immunity" to Jane.

2.  Sufficiency of evidence:  stalking in violation of an abuse prevention order.  "To establish the aggravated form of stalking at issue in this case, § 43 (b) (stalking in violation of court order), the Commonwealth must prove both a pattern of conduct constituting stalking under § 43 (a) and that the conduct violated (in this case) a 209A order that was in effect."  Edge v. Commonwealth, 451 Mass. 74, 76 (2011).  General Laws c. 265, § 43(a), as appearing in St. 2010, c. 92, § 9, provides that "[w]hoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously

_____

[17] There was a second false statement regarding the alleged kidnapping.  Because the defendant was acquitted of that charge, we consider it only as it may have impacted Jane's credibility regarding the October 29 incident.

alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury is guilty of the crime of stalking . . . ."   "A pattern or a series in the context of this statute . . . involve[s] more than two incidents." Commonwealth v. Kwiatkowski, 418 Mass. 543, 478 (1994).  Here, the judge instructed the jury that to meet its burden of proof on the stalking charge, the Commonwealth had to prove the defendant committed three acts on October 29, 2013:  (1) slapping Jane at the Chao Chow City restaurant; (2) calling her at the BPD station; and (3) confronting her at Susan's apartment.

The defendant argues that the Commonwealth failed to prove a "series of acts over a period of time" because each of the alleged acts, even if proved, occurred on the same day.  We are not aware of any authority that supports the defendant's contention that, in this context, "over a period of time" means over a period of time greater than one day.  The statute does not define "over a period of time," and our cases have not further interpreted these words.  Consequently, we "give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  "We derive the words' usual and accepted meanings from sources presumably known to the

statute's enactors, such as their use in other legal contexts and dictionary definitions." Ibid. The word "over" is defined as "from one point to another across an intervening space." Webster's Third New International Dictionary 1605 (2002). "Period" means "any extent of time." Id. at 1680. "Time" is defined as a "measurable duration." Id. at 2394. Thus, the phrase "over a period of time" simply denotes the passage of time. We see no reason to require a particular interval of time between acts. As long as the acts are separate, distinct, and separated by some interval, they occur "over a period of time" within the meaning of the statute.

Here, there was evidence that the defendant arrived at Chao Chow City, confronted Jane and slapped her at approximately 4:00 A.M.; he called her repeatedly when she was at the BPD around 6:00 A.M., and he emerged from the bedroom closet wielding a knife around 9:00 A.M. Examining this evidence in the light most favorable to the prosecution, see Latimore, 378 Mass. at 677, the jury could have found beyond a reasonable doubt (1) that the defendant engaged in three separate acts over a period of time which alarmed and annoyed Jane, and would have caused a reasonable person to suffer substantial emotional distress, and (2) that the defendant threatened Jane with the intent to place her in imminent fear of death or bodily injury.

The defendant was charged with an aggravated form of stalking because the acts were alleged to have been committed in violation of an abuse prevention order issued under G. L. c. 209A, §§ 3 and 4. A violation of an abuse prevention order consists of (1) the existence of the order at the time in question, (2) the defendant's violation of the order, and (3) the defendant's knowledge of the order. Commonwealth v. Silva, 431 Mass. 401, 403 (2000).

The defendant claims that the evidence of his knowledge of the order was insufficient where the order indicates it was served before it was issued. The order shows that it was issued on June 27, 2013, at 3:40 P.M. However, it also indicates in two different places that it was served in hand by a court officer on June 24, 2013, at 3:50 P.M., three days earlier, at the Lawrence District Court. Of course, a restraining order cannot be served before it exists. However, given the times on the order for issuance and service (a ten-minute interval), and the two separate handwritten entries on the order indicating service by a court officer on June 24, the jury could have reasonably inferred that the date of issuance on the order was a typographical error, and that the order had been issued and served on the defendant at the Lawrence District Court on June 24, 2013.

Further, there was ample evidence that the defendant knew that he was not permitted to contact Jane. The jury heard that she had obtained two prior restraining orders against the defendant, the most recent of which expired only one month before the June, 2013, order was issued. The jury also heard evidence that the defendant engineered a ruse, so that he could see Jane in violation of the order while he was incarcerated. From this evidence, the jury could have found that the defendant knew he was prohibited from contacting Jane. For all of these reasons, we conclude that the evidence was sufficient to support the jury's guilty finding on the charge of stalking in violation of a restraining order.[18,19]

3. <u>Reasonable doubt instruction</u>. Since January of 2015, the preferred jury instruction on reasonable doubt in Massachusetts includes the following language:

---

[18] The defendant advances the same argument regarding the dates on the restraining order to challenge the sufficiency of the evidence on his conviction of aggravated assault and battery. We reject the argument for the reasons set forth above.

[19] The indictment for breaking and entering with intent to commit a felony was placed on file with the defendant's consent. We do not consider appeals from convictions placed on file absent exceptional circumstances, "such as where the legal error affects all the charges." <u>Commonwealth</u> v. <u>Prashaw</u>, 57 Mass. App. Ct. 19, 27 (2003). The defendant's argument that his motion for required finding should have been allowed because the indictment did not allege that the entry occurred in the nighttime, does not affect all the charges. Accordingly, we do not address this claimed error.

"A charge is proved beyond a reasonable doubt if, after you have compared and considered all of the evidence, you have in your minds an abiding conviction, to a moral certainty, that the charge is true.  When we refer to moral certainty, we mean the highest degree of certainty possible in matters relating to human affairs -- based solely on the evidence that has been put before you in this case."

Commonwealth v. Russell, 470 Mass. 464, 477 (2015).  Here, without the benefit of the Supreme Judicial Court's guidance in Russell, the judge used different language, instructing the jury that "proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  In other words, you have an abiding conviction that the charge is true."  The defendant argues that the judge's failure to include the words "moral certainty" in his instruction was constitutional error. We disagree.

The judge's reasonable doubt instruction was derived from Federal Judicial Center Pattern Criminal Jury Instruction 21 (1998), the same instruction considered by the Supreme Judicial Court in Russell.[20]  There, the Supreme Judicial Court concluded

---

[20] In relevant part, instruction 21 provides:

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not

that "the instruction met the minimum requirements of due process under the Fourteenth Amendment and art. 12." Russell, supra at 474. However, because of concern about potential misinterpretation of the term "moral certainty,"[21] the Supreme Judicial Court exercised its supervisory power and provided a uniform instruction on reasonable doubt which further defined that term. The instruction is to be used by all Massachusetts trial judges from that point forward. Id. at 477. Because Russell was decided after the trial in this case, the judge did not have the benefit of that uniform instruction.

We view the charge in its entirety to determine its adequacy. Commonwealth v. Sellon, 380 Mass. 220, 231-232 (1980). The jury were instructed that the defendant was presumed innocent and that the Commonwealth bore the burden of proof. They were also instructed that "it is not enough for the Commonwealth to establish a probability, even a strong probability, that the defendant is more likely to be guilty than not guilty." Instead, the jury were instructed that they must be "firmly convinced and have an abiding conviction that the

---

guilty, you must give him the benefit of the doubt and find him not guilty."

[21] The "moral certainty" language comes from Commonwealth v. Webster, 59 Mass. 295, 313 (1850). The Webster charge was the preferred instruction on reasonable doubt for 150 years before Russell.

defendant is guilty of the crime charged."  These instructions, taken as a whole, adequately "impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused."  Commonwealth v. Pinckney, 419 Mass. 341, 344 (1995).  We discern no error.

4. The jury question.  In connection with the stalking charge, the jury asked "is it sufficient that he showed up at Chao Chow or necessary we are convinced of slapping."  The defendant claims that the judge's answer to that question, set forth in the margin,[22] permitted conviction on a theory not supported by the evidence.  Again, we disagree.

---

[22] The judge responded to the jury as follows:

"My answer to you is that it's not sufficient if the Commonwealth simply shows that he showed up at the Chao Chow restaurant.  But the Commonwealth does not necessarily have to prove to you beyond a reasonable doubt that there was an incident of slapping or three slaps at the Chao Chow restaurant.  Let me explain.  The Commonwealth does have to prove to you that there was some incident at the Chao Chow restaurant that would cause a reasonable person to suffer substantial emotional distress; and that this act at the Chao Chow restaurant did indeed cause [Jane] to become seriously alarmed or annoyed; and that the defendant took these actions at the Chao Chow restaurant willfully and maliciously . . . .

    "What the Commonwealth would have to prove is even if the Commonwealth couldn't prove an actual slapping, that the defendant showed up uninvited at the Chao Chow restaurant; that his presence was not consented to by the people at the Chao Chow restaurant; that he shows up intentionally knowing the people are there; that he doesn't show up just accidentally and, oh, jeez, there's [Jane]; instead, he intentionally knows that she's there at the

"The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly."  Commonwealth v. Bell, 455 Mass. 408, 420 (2009), quoting from Commonwealth v. Robinson, 449 Mass. 1, 7-8 (2007).  There was evidence that after attempting to reach Jane by telephone, the defendant appeared at the restaurant uninvited and angrily confronted her in violation of the restraining order.  From this evidence, the jury could have found, even without the alleged slapping, that the defendant acted willfully and maliciously in a way that alarmed and annoyed Jane, causing her substantial emotional distress.  Accordingly, we discern no abuse of discretion in the judge's answer and supplemental instruction.

Judgments affirmed.

---

time; that he knows that he is not supposed to have any contact with or be within a hundred yards of [Jane]; and that he does some action there at the Chao Chow restaurant willingly and maliciously that causes her to become seriously alarmed or annoyed and would cause a reasonable person to suffer substantial emotional distress."