The defendant was convicted by a Superior Court jury of several charges, including breaking and entering and larceny. The convictions stem from the defendant's arrest at 4:30 A.M. on a May morning, after he was witnessed reaching through the broken window of a car parked in a residential Boston neighborhood. Several other cars with broken windows were nearby, and there was also evidence of thefts from the cars. On appeal, the defendant claims that a police sergeant's testimony regarding certain statements the defendant made while being booked was improperly admitted, entitling the defendant to a new trial. The defendant also claims improprieties in the Commonwealth's opening and closing statements. We affirm.
1. We summarize the facts relevant to this appeal as the jury could have reasonably found them, reserving some particulars for later discussion.
The Commonwealth's principal percipient witness was one Howard Simpson. He testified that between 4:00 and 4:30 A.M. , on May 24, 2014, while being dropped off in a residential Boston neighborhood, he saw the defendant stand up from behind a car, while carrying various bags, and walk away. Simpson followed the defendant as the defendant went to a neighboring street, where Simpson saw the defendant use a flashlight to look into a truck, heard a "[p]op, pop," like glass shattering, and then saw the defendant reaching into the truck through the window.
The police were called, and arrived at the scene only minutes later. They found the defendant crouching beside a car. The truck, nearby, had a broken rear window, as did at least two other nearby cars. The police also recovered four plastic bags next to a wall near the truck.
The defendant was arrested and brought to the police station in a transport. When they arrived at the station, the police found various items on the floor of the transport wagon, including a debit card from one of the car break-in victims. No flashlight was found on the defendant.
At the station the defendant engaged in a colloquy with police Sergeant Thomas Brooks, who collected and photographed items seized from the defendant and from the plastic bags. The defendant initiated the colloquy by asking, "Am I going to get some of my stuff back?" Sergeant Brooks documented this in his notebook (which subsequently was recorded in the police report), and he testified to the colloquy at trial.
At trial, the defendant argued that Simpson had mistakenly identified him. The jury returned guilty verdicts on one count of breaking and entering at nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 16 ; one count of the lesser-included offense of attempted breaking and entering in the nighttime, in violation of G. L. c. 274, § 6 ; and one count of larceny of property valued over $250, in violation of G. L. c. 266, § 30. This appeal followed.
2. Discussion. a. Sergeant Brooks's testimony. The defendant first argues that Sergeant Brooks was improperly allowed to testify regarding the colloquy he had with the defendant at the police station. Sergeant Brooks's testimony was admitted using the device of "present recollection refreshed." Brooks testified that he could not presently remember the exact statements the defendant made, but that he "had documented [the colloquy] that night in quotes." He asked to see the police report where those quotes were recorded, in order "to be accurate" as to the "exact quote."
After Brooks was provided and reviewed the police report, the Commonwealth began to ask him about the colloquy. Defense counsel asked that the report be taken from the witness stand, to which Brooks replied that he was "just trying to memorize it now." After some further back and forth, during which Brooks again stated that he was "trying to memorize it," the following exchange occurred:
COMMONWEALTH : "Do you recall the first thing that the defendant said to you?"
SERGEANT BROOKS : "Yes.... He said, 'Am I going to get some of my stuff back?' ... I generally told him I'm not certain what property is his and what property is the stolen property."
COMMONWEALTH : "And did-you said that he responded to that, correct?"
SERGEANT BROOKS : "Yes."
COMMONWEALTH : "And do you remember exactly what he said?"
SERGEANT BROOKS : "Yes. I would like to read the quote one last time to be certain that I'm not skipping a part of the conversation."
COURT : "Yes. You may do so."
COMMONWEALTH : "And do you remember now what the second thing that he said was?"
SERGEANT BROOKS : "He said, 'It doesn't matter. I'm going to get it all back when it's over.' "
COMMONWEALTH : "And did he say anything else after that?"
...
SERGEANT BROOKS : "I responded that, 'I'm going to log it all as victim's property until it's known.' "
COMMONWEALTH : "And do you recall what his response was?"
SERGEANT BROOKS : "Yes. He said, I'm going to beat the case anyway. The victims are not going to testify' " (emphasis supplied).
At a sidebar conference immediately following, the defendant moved to strike, which the trial judge denied. However, at the conclusion of Sergeant Brooks's testimony, the trial judge reconsidered, sua sponte, and instructed the jury to disregard the defendant's statement that "he was going to beat the case because the victims are not going to testify." Following a request by defense counsel, the judge repeated this instruction during the jury charge.
The defendant's attack on this testimony is twofold: first, that Sergeant Brooks was in essence allowed to read the police report to the jury-a misuse of present recollection refreshed-and second, that the colloquy itself was irrelevant and highly prejudicial because it "paint[ed] [the defendant] as an arrogant thief." We discern no error.
There are actually two evidentiary rules at issue here-present recollection refreshed, and "past recollection recorded." Present recollection refreshed is utilized when the witness's memory is exhausted; any means may then be used to refresh recollection, but if the witness is shown a document it may not be read, or shown, to the jury. See Commonwealth v. Woodbine, 461 Mass. 720, 731-732 (2012). Instead the witness testifies from his or her present recollection, after being refreshed. Id. at 730-734. Alternatively, the witness may be allowed to testify from, and to read from, a document that constitutes past recollection recorded, if the witness recorded events that he or she perceived, at or about the time the events occurred. See Commonwealth v. Evans, 439 Mass. 184, 189-190, cert. denied, 540 U.S. 923 (2003) ; Commonwealth v. Galvin, 27 Mass. App. Ct. 150, 151-152 (1989).
These two evidentiary doctrines are distinct in that they have different prerequisites and evidentiary outcomes, but they often arise together. Importantly, the Supreme Judicial Court has cautioned that in evaluating the admissibility of evidence under the two doctrines they should not be "regarded as inflexible dogmas. Courts ... should cease to treat them as anything but provisional and crude aids to truth. The trial court's discretion should be allowed to control." Fisher v. Swartz, 333 Mass. 265, 270 (1955), quoting from Wigmore on Evidence (3d ed.) § 755.
Here Sergeant Brooks's testimony was properly admitted. He testified that he remembered the conversation after reviewing the police report and he proceeded to testify without, it appears, directly reading from the report. Those facts ordinarily would satisfy present recollection refreshed, although here this interpretation is clouded by his reference to memorization. See Commonwealth v. Hoffer, 375 Mass. 369, 376 (1978). But even if Brooks was not testifying from present memory, he also testified that he recorded the colloquy, including the exact quotes, in his notebook. Thus, the prerequisites of past recollection recorded were met here,[2] and accordingly it would also have been within the judge's discretion to allow the witness to read from the document. See Commonwealth v. Dougherty, 343 Mass. 299, 306 (1961) ; Commonwealth v. Pickles, 364 Mass. 395, 401-402 (1973), citing Dougherty, supra ("The judge was not required to distinguish between 'present recollection revived' and 'past recollection recorded' unless there was some difference in legal consequence. Whether or not the notes created a present recollection by the officer, the judge in his discretion could permit him to incorporate them in his testimony").
As to the defendant's argument that the colloquy was irrelevant, certain of the defendant's statements were probative of guilt, and thus admissible. The defense argued mistaken identity, and under those circumstances the defendant's reference to "my stuff" at the police station could be understood to contradict the defense's theory, by showing a connection to the crime. The defendant asserts that the "my stuff" statement could have been entirely innocuous-a reference to items in the possession of the police that were in fact his-but that is a contention for the jury, to be explored through cross-examination and argument. And, even if we considered the defendant's last statement in the colloquy to be more prejudicial than probative, the trial judge struck that statement, and the jury are presumed to follow the judge's instructions. See Commonwealth v. Degro, 432 Mass. 319, 328 (2000). Finally, we note that here the evidence of guilt was considerable; even if we found error with respect to these statements, any error was nonprejudicial. See, e.g., Commonwealth v. Cheremond, 461 Mass. 397, 411 (2012).
b. Commonwealth's opening and closing statements. The defendant also challenges certain remarks in the prosecutor's opening and closing statements. None of the challenged statements was objected to at trial, and thus we review only for a "substantial risk of a miscarriage of justice." Commonwealth v. Randolph, 438 Mass. 290, 296-298 (2002). Once again, we discern no reversible error.
With regard to the opening, the defendant argues that the prosecutor engaged in speculation as to the defendant's motive when she stated that the defendant "moved on to his next victim" because "there was nothing else there that he felt was important." We disagree. The prosecutor was stating the evidence she expected to prove, and the reasonable inferences therefrom. That is permissible. See Commonwealth v. Fazio, 375 Mass. 451, 454 (1978).
As to the closing, it was not improper for the prosecutor to argue, from the evidence, as to where the defendant might have secreted the flashlight or why it might not have been found. A prosecutor is entitled to argue forcefully for a conviction as long as the inferences are rooted in the evidence. See Commonwealth v. Roy, 464 Mass. 818, 833 (2013), citing Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). It is up to the jury to evaluate the merits of the argument.
Nor was the argument improper where the prosecutor stated that the defendant's argument was "not the truth." While perhaps inartful, that statement by the prosecutor, in context, was the conclusion to an appropriate response to defense counsel's argument that Simpson had mistakenly identified the defendant as the perpetrator. See Commonwealth v. Brewer, 472 Mass. 307, 315 (2015) ; Commonwealth v. Mitchell, 89 Mass. App. Ct. 13, 28-30, cert. denied, 137 S. Ct. 232 (2016).
Finally, there was no reversible error arising from the prosecutor's characterization of certain arguments by defense counsel. In particular, the prosecutor stated:
"Now despite all of that overwhelming evidence of the defendant's guilt, the defense attorney wants you to believe that there is no way that [the defendant] was responsible for these break-ins. No. Because clearly this is a case of mistaken identity or there is someone else that came in the scene and then left. That is crazy. That is a lot of static, and a lot of attempts to distract you from what you know is the truth" (emphasis supplied).
We agree with the defendant that these statements, and a later reference to defense counsel's arguments as "ridiculous," should not have been made. The prosecutor can quite properly respond to the arguments made by defense counsel, but these statements crossed the line by impugning defense counsel himself. Nevertheless, the error did not create a substantial risk of a miscarriage of justice. The trial judge provided a curative instruction to the jury to "disregard any characterization of another attorney's arguments as static or distractions or ridiculous." See Kozec, supra at 518. Particularly viewed in the context of the strength of the evidence of the defendant's guilt, any impropriety does not warrant reversal of the defendant's convictions.
Judgments affirmed.

Brooks testified that he recorded the quotes in his notebook, and provided them for inclusion in the police report. It is not required that he prepare the police report himself. See Commonwealth v. Galvin, 27 Mass. App. Ct. at 152.