Following a jury trial in the Superior Court, the defendant, Joshua Z. Graves, was convicted of assault and battery by means of a dangerous weapon causing serious bodily injury. On appeal, he claims that errors in (1) the prosecutor's closing argument, (2) the introduction of lay opinion testimony, (3) the admission of hearsay testimony, and (4) the admission of social worker entries in the victim's medical records either individually or in combination created a substantial risk of a miscarriage of justice. We affirm.
Background. The fifteen year old victim and his twelve year old brother (younger brother) had moved to Dorchester within the past year. The brothers played basketball most days at a park in Dorchester. On the date at issue, they arrived at the park to play basketball, and saw the defendant, among several other teenagers.[2] The victim observed the defendant waving a knife and showing it to his friends. The defendant had a tattoo on the side of his neck that said "Pe$o" or "PEI$CE".[3] The younger brother recognized the defendant because he had played basketball with him before and because the defendant was at the basketball courts "daily."
During an ensuing basketball game, the younger brother, while attempting to gain his balance, pushed the defendant. The defendant shoved the younger brother to the ground and then punched him in the head and back. After hearing his younger brother say "help me," the victim intervened and punched the defendant in the face. The victim was then "jumped" by approximately fifteen people, who punched and kicked him. The defendant was among those involved in the attack.
While the victim was on the ground, he saw the defendant "run over to the bench where the knife was." At some point the victim heard someone yell, "that's enough, that's enough," and "then everyone ran away." As the younger brother walked toward the victim, he passed the defendant who was leaving the court. The younger brother saw that the defendant was "holding a knife and it had blood on it." The younger brother testified that the knife was the same knife he had seen the defendant handling earlier in the day.
The victim sustained stab wounds to his liver and his arm. The injury to his arm required stitches, and the injury to his liver required surgery and four days of hospitalization. Prior to being transported to the hospital, and again at the hospital, the victim described the incident and the defendant to the police.
Police officers responded to the scene, but were initially unsuccessful in identifying the assailant. Approximately one year later, however, a person arrested on another matter (witness), provided information about the stabbing. During his interview with detectives, the witness described the basketball game, fight, and stabbing in a manner that mirrored the victim's earlier description of events. The witness also provided the defendant's name, and said that the defendant had a neck tattoo with the word "Pesce."
Based on this new information, the lead investigator, Detective Richard Moy, located a picture of the defendant from September 2013 and created a photographic array (photo array). The victim and the younger brother viewed the array separately. Both identified the defendant from the array.[4]
Discussion. The defendant first claims that the prosecutor's closing argument contravened scientific research on the reliability of eyewitness identifications and improperly commented on the witness's fear of the defendant, and thus created a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002). We disagree. We have reviewed the closing argument in its entirety, in view of the evidence adduced at trial and the judge's instructions. The prosecutor grounded her statements in the evidence presented at trial, properly asked the jurors to use their common sense and life experience, and did not ask the jurors to speculate or take into account improper considerations. Viewed in the context of her entire closing, the prosecutor was arguing from the evidence that the witness, who recanted his testimony before the grand jury, should be believed. See Commonwealth v. Brewer, 472 Mass. 307, 315 (2015) ("we consistently have held that, where the credibility of a witness is an issue, counsel may argue from the evidence why a witness should be believed" [quotations and citations omitted] ).[5] Furthermore, the judge's instructions, which the defendant does not challenge on appeal, were clear, comprehensive, and accurate, and we presume the jury followed them. See Commonwealth v. Cortez, 438 Mass. 123, 130 (2002). In addition, the judge's instructions on eyewitness identification followed the Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051, 1052-1058 (2015). There was no error.
The defendant next claims that Detective Moy's testimony regarding the blind administration of the photo array shown to the victim and the younger brother constituted inadmissible hearsay. We disagree. This testimony, which was not subject to any objection at trial, did not constitute hearsay because it stemmed from Detective Moy's personal knowledge that he asked another detective, who had no prior involvement in the investigation, to act as a "blind administrator" in the identification process. It was reasonable to infer that, as the lead investigator, Detective Moy knew or had reason to know the identities of the detectives involved in the investigation. In any event, there was no out-of-court statement admitted for the truth of the matter asserted, and thus there was no error, much less any substantial risk of a miscarriage of justice. See generally Mass. G. Evid. § 801(c) & note (2018).
Likewise, there was no error in Detective Moy's testimony, to which the defendant did object at trial, regarding Boston Police Department (BPD) policies and procedures for conducting photo array identifications. This testimony, viewed in conjunction with the testimony of the victim and his younger brother to the effect that they reviewed and signed witness preparation forms delineating the photo array identification processes, was relevant to show that BPD's policies and procedures were followed, and to establish that the identification process was free from unnecessarily suggestive practices or procedures. This is especially so where the judge read to the jurors the Model Jury Instructions on Eyewitness Identification. Here again, there was no error.
Next, we discern no substantial risk of a miscarriage of justice created by Detective Moy's testimony that photographs of the defendant in 2014 showed "more tattoos around his neck area" than a photograph of the defendant from 2013. Evidence of the change in tattoos on the defendant's neck was admitted at trial through other witnesses, and the evidence against the defendant was strong and corroborated. See Commonwealth v. Perez, 411 Mass. 249, 261 (1991). In addition, the prosecutor did not reference the now-challenged testimony in her closing argument.
Finally, the admission of medical records containing social worker entries did not create a substantial risk of a miscarriage of justice. The entries were neither referenced in the trial testimony of the doctor who testified to the victim's injuries, nor in the prosecutor's closing argument. In addition, the judge instructed the jury that emotion and sympathy have no place in deliberations. See Commonwealth v. Anderson, 445 Mass. 195, 209-210 (2005) (judge mitigated any potential prejudice by instructing jurors, among other things, not to base their verdict on any sympathy or emotion).[6]
Judgment affirmed.

The victim and his brother are Caucasian, while the other teenagers at the basketball court on that day were African-American. The judge instructed the jury on cross-racial identification according to the language prescribed by the Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051, 1055 (2015).

The victim testified that the tattoo said "Pe$o." His younger brother met with the police and, at their request, drew a picture of the neck tattoo. The picture, which read as "PEI$CI," was admitted in evidence as an exhibit.

Only the defendant's face, and not his neck tattoos, was visible in the photo array.

Contrary to the defendant's claim, the prosecutor's closing argument did not violate the defendant's confrontation right. See art. 12 of the Massachusetts Declaration of Rights. The prosecutor permissibly explained why the witness's grand jury testimony should be believed instead of his trial testimony. This argument was based on the evidence at trial, which included the witness's explanation that he had previously lied because of the consequences of being a "rat" or "snitch."

We also find no error in the admission of the witness's testimony that he learned of the stabbing through neighborhood rumors. The testimony was properly elicited on redirect examination to explain how the witness claimed to have learned so many details about the incident at the basketball courts, despite his new claim at trial that he was not a percipient witness. Further, as no limiting instruction was requested at trial, the judge did not err in not providing one sua sponte. See Commonwealth v. Leonardi, 413 Mass. 757, 764 (1992).